Hunter v. Hunter.

———————

ELIAS D. HUNTER *vs.* JOHN HUNTER, JUN. ELIZABETH D. HUNTER, ANN M. HUNTER, ADELE HUNTER and ELIAS D. HUNTER, JUN.

Rents reserved upon perpetual leases are incorporeal hereditaments, and as such they are descendible from those to whom they are reserved.

The word "seised," in a conveyance, does not confine the description to tangible property. *Seisin* has reference to the estate, and not to the thing in which the estate exists.

Where a deed conveyed property to J. H. to be held by him in trust to and for the use of the grantee and his wife, during their natural lives, and for the use of the survivor during his or her life; and upon the death of the survivor the property was to be held in trust for the use of their son, E. D. H. if he should then be a minor, until he should attain the age of twenty-one years; or if he should then be of full age, or when he should attain that age, it was to vest in him absolutely; *Held* that the deed was to be construed as providing that the property should be held for the use of the parents,

and the survivor, during life; and that upon the death of the survivor *and* the full age of the son it should vest in him absolutely.

Authority was also conferred, by the same deed, upon J. H., his heirs and assigns, or the guardians of such of his heirs as might be minors, to make sales or leases of all or any part of the estate included in the deed; but it was expressly provided that the *considerations*, rents, issues and profits of what might be sold should be subject to the trusts specified in that conveyance. Under this power J. H. sold a portion of the lands, and received a part of the consideration money. He also leased another portion of such lands, in perpetuity, and received a part of the rents accruing during his life. He also entered into contracts for the sale of another portion of these lands and received a part of the consideration money, and made contracts for the extinguishment of the rents of a portion of the lands held under perpetual leases, and received a part of the consideration money. *Held*, that in all those cases where the contracts were not consummated by conveyances, the property had not been divested, but after the death of J. H. was in his son E. D. H.; and the requisite conveyances should be executed by the latter.

*Held also*, that J. H. was entitled, during his life, to the rents, issues and profits of the unsold lands, and to the interest accruing on the consideration moneys of such portions of the real estate as he had sold, or contracted to sell. And that upon his death, his son E. D. H. became seised in fee of the unsold lands, and the rents on the then existing and unaffected leases, and entitled to the consideration moneys for that portion of the estate which had been sold; whether it had been paid to J. H. or remained unpaid at the time of his decease.

*Held further*, that the principal moneys which had been received by J. H. in his lifetime, on account of the lands, or which remained unpaid at his death, belonged to E. D. H.; and that so much of the accruing income as remained unpaid at the death of J. H. was the property of J. H. and passed under his will, as a portion of his personal estate.

Where such deed conveyed lands in trust for J. H. and his wife, during life, and for their son, E. D. H., during his minority; and on the death of both parents, and the termination of such minority, E. D. H. was to stand seised of all the estate, to and for the sole use of himself, his heirs and assigns in fee, *without any further trust of and concerning the same;* HELD that this was clearly a legal estate, and was exempt from a power of revocation reserved to J. H. and his wife, in respect to "the *trusts*" contained in such deed.

A deed, executed by J. H. and his wife to J. H. jun. was confided to the custody of P. and was not to be delivered to the proposed grantee until he should attain the age of 25 years. If he should die under that age, having married with the consent of his parents, and having lawful issue at the time of his death, the title to the premises was to vest in, and the deed was to be delivered immediately to, or for the benefit of, such issue. *Held,* 1. That

Hunter *v.* Hunter.

the term *having* lawful issue, applied to the time when the grantee might die under the appointed age.

2. That, the revised statutes providing that as to any ulterior disposition of property by way of remainder, the failure in such cases is at the time of the death of the ancestor, the use of those terms did not create an estate tail, by implication, in J. H. jun. during his minority, to be forfeited, (in the event of his death under 25,) at the time when he would, if living, have attained that age.

3. That the ulterior estates were not made dependent upon a contingency too remote to take effect; the suspension of the power of alienation being limited to the single life of J. H. jun.

4. That the deed did not become inoperative and void, by the death of one of the grantors previous to the time specified for its delivery; but that the title might be perfected by a delivery of the deed by the depositary to the grantee, after he attained the age of 25.

When a deed is at first delivered to a third person as an *escrow*, such delivery is good and valid, and vests the title on the performance of the condition, or the happening of the specified contingency. Therefore if either of the parties dies before the condition is performed, and the condition is afterwards perfected, the deed avails; and takes effect by the first delivery.

Where it was expressly declared in an explanatory instrument accompanying a deed that those papers were to be placed in the hands of P. as an escrow, yet there were some provisions for intermediate action—such as reservations or creations of power to manage, lease or sell the lands, to collect the rents, and moneys due on contracts of sale, and to invest the moneys which might be received for the benefit of the grantee, provided he should eventually be entitled to the property—*Held*, that these provisions, to give them any effect, must be deemed declarations of trust, which it was competent for the grantors to make; and that as P. might be considered the trustee of the grantee, to receive and hold the deed provisionally, for him, they became and continued effective.

A grantee of land, while the deed to him is held as an escrow, has no expectant *estate* which gives him a right to the intermediate rents and profits, under the 40th section of the title of the revised statutes relative to the creation and division of estates.

There can be no vaild existing limitation of an estate, under an escrow, until it has become effectual by the eventual delivery.

Where a testator devised to his granddaughters all his lands "in great lot No. 25 in the Hardenburgh patent lying in the county of Greene, and all my other lands in the said county of Greene, from and after the death of my said son," and neither the patent nor the lot lay wholly in that county; *Held*, 1. That this included only that part of lot No. 25 situated in the county of Greene, which belonged to the testator; the words "lying in the county of Greene" not being designed as descriptive of the last preceding

Hunter *v.* Hunter.

antecedent—the H. patent—nor of the lot, but as referring to the lands intended to be devised.

2. That the words " from and after the death of my said son," which followed both devises, were applicable to each.

A devise in general terms, of all the testator's lands in a particular county, passes his right to rents under perpetual leases on lands lying in such county.

Where a testator gave a legacy of $20,000 to each of his three granddaughters, with a positive direction that such legacies should be paid out of the personal estate; and in a previous specific bequest of certain funds in the hands of P. to his grandson, it was declared that they were subject to the payment of the legacies to the granddaughters; is was *held* that this clause neither directed nor implied that those legacies should be paid out of such funds primarily, but that a resort might be had to them, if it should become necessary; in other words, that if either should fail, it should be the specific legacy.

*Held also,* that those funds might be applied towards the payment of the legacies to the granddaughters, in aid of that portion of the estate liable therefor, according to the usual rule, but not otherwise.

A testator devised a farm to his son, for life, and directed that after the son's death the farm should be divided into three parts, and he gave one share to each of his three granddaughters in fee; and in case any of his granddaughters should die before the termination of the life estate of his son, leaving lawful issue or lineal descendants her surviving, then he gave and devised to such lawful issue, &c. the same share which the mother would have taken if she had lived. And in case any of his said granddaughters should die without leaving lawful issue, &c. then the share of the one so dying was to be divided equally between her surviving sisters, and the issue of such of them as might then be dead. *Held,* that the devise over to the issue must necessarily take effect, if at all, immediately upon the termination of the life estate of the testator's son; and that, although the devise to the survivor or survivors, or the issue of any who might have previously died, was not confined in terms to a death within the lifetime of the son, yet that as both clauses related to the same property, and provided for consistent alternatives, the testator contemplated in each the same period; that neither, therefore, suspended the power of alienation beyond the life of one person.

A testator devised to his grandson, J. H. jun. the Bayard farm, on condition that he should not sell or dispose of the same until he should have attained the age of twenty-five years; and he directed that upon the decease of his son E. D. H., and within forty days thereafter, J. H. jun. should have his election either to remain in the occupation of the Bayard farm, or to remove to Hunter's Island; and in case he should elect to remove to Hunter's Island' that he should leave to his mother and sisters the Bayard farm, &c. for their residence, free of rent, as long as they should remain single, and desire

Hunter *v.* Hunter.

to occupy the same. And in the event of J. H. jun. electing to remove to Hunter's Island, &c. the testator devised to him Hunter's Island, Hart Island and the Provoost farm, from and after the death of E. D. H. But in case J. H. jun. should survive E. D. H. and omit to make his election, or should die before E. D. H., leaving lawful issue, then he ordered the islands and farm to be sold and the proceeds divided; and in case J. H. jun. should die before E. D. H., leaving no issue him surviving, then, upon the death of E. D. H. the islands and farm were given to the testator's three grand-daughters. By a codicil the testator directed that upon making the election mentioned in the will, J. H. jun. should execute a deed for the Bayard farm to his three sisters, subject to the use and occupation thereof by his mother and sisters, so long as they should remain unmarried. *Held*, 1. That there was nothing in the devise of the Bayard and Provoost farms, or of the islands, which could suspend the absolute power of alienation, as to either, for more than two lives in being at the death of the testator.

2. That neither the requisition in the will that J. H. jun., on making the election, should leave the Bayard farm to his mother and sisters, so long as they should remain single, nor the direction in the codicil that, on making such election, he should execute a deed of said farm to his sisters, subject to the use and occupation thereof by them and their mother, and the survivors, so long as they should remain unmarried, would effect a suspension of the power of alienation at all, within the meaning of the statute.

3. That J. H. jun. took a present fee in the Bayard farm, with a restriction as to selling it until he should attain the age of 25 years, determinable on his electing, at the death of E. D. H. to remove to Hunter's Island, or—on his refusal or omission to do that—at his death, if he should leave no lawful issue then living.

4. That he could sell the farm, on his attaining the requisite age, and give a title for it, defeasible only upon his dying without lawful issue.

5. That he, upon the death of E. D. H., on his electing to remove to Hunter's Island and executing a deed to his sisters, for the Bayard farm, would take a fee, subject to the privilege to them and their mother mentioned in the codicil, in the two islands and the Provoost farm, determinable in favor of the granddaughters, on his dying without leaving lawful issue.

6. That upon J. H. jun. acquiring the fee he could dispose of the property, and confer a title therefor, subject to be defeated only upon the specified contingency.

A devise of lands to E. D. H. for life, then to J. H. jun. in fee, and upon his dying without leaving lawful issue at the time of his death, over to his three sisters, in fee, is not too remote; the power of alienation not being suspended by the lives of the children of J. H. jun.

The statute has reference to the lives the continuance of which actually suspend the power.

A suspension of the power of alienation, resulting simply from minority, is not such as is contemplated by the statute.

A charge upon the income of the testator's estate, for the education of his grandchildren, is not void as illegally suspending the power of alienation of the real estate, and the absolute ownership of the personal property.

The complaint in this cause was filed by Elias Desbrosses Hunter, individually, and as executor of the last will and testament of John Hunter, late of Hunter's Island in the county of Westchester, deceased, against the defendants John Hunter, jun. Elizabeth D. Hunter, Ann M. Hunter, Adele Hunter and Elias D. Hunter, jun. for a construction of the will of the testator, and of sundry deeds upon which his title depended. The complaint alleged that the testator died on the 12th of September, 1852, having in his lifetime and on or about the 8th of May, 1852, duly made and published his last will and testament, in due form of law to pass real estate, by which he devised and directed as follows:

"*First.* I direct my just debts and funeral expenses to be paid out of my personal estate. *Second.* I give, devise and bequeath unto my son Elias Desbrosses Hunter, his heirs and assigns forever, all my land in great lot forty-one (41) of the Hardenburgh patent in Delaware county : my lot number eleven (11) in the town of Mamakating in Sullivan county : my house and lot of ground in Batavia-street or lane in the city of New-York : my two houses and lots of ground in Cherry-street in said city : my two houses and lots of ground in Water-street in said city : and my store and lot of ground in Front-street in said city : which property formerly belonged to my wife and has been in the possession of my said son for many years. And I also give, devise and bequeath unto my said son, for and during his natural life, the use, possession, income and profits of the residue of my estate, real and personal, not hereinafter otherwise expressly disposed of. *Third.* Having given unto my grandson John Hunter, my land in great lots numbers four (4) and five (5) of the Hardenburgh patent, lying in the county of Sullivan, by deed of fee simple, I do hereby ratify and confirm forever my said gift and deed to him : and I give and devise unto my said grandson, his heirs and assigns forever, all my other lands in that county, except the premises above devised to

Hunter v. Hunter.

my said son. And I also give and devise unto my said grandson, John Hunter and his heirs, my farm on Throgs Neck, in Westchester county, known as the Bayard farm, with the buildings and appurtenances thereof, upon condition however that he shall not sell or dispose of this farm, until he shall have obtained the age of twenty-five years. *Fourth.* Upon the decease of my said son, and within forty days thereafter, it is my desire that my said grandson John Hunter, shall have his election either to remain in the occupation of the Bayard farm, or to remove to Hunter's Island, where I now reside: and in case he should elect to remove to Hunter's Island, that he will lease to his mother and his three sisters, Elizabeth, Ann and Adele, the Bayard farm with its cottage, for their residence, free of rent as long as they shall remain single, and desire to occupy the same. In the event of my said grandson electing to remove to Hunter's Island, and providing a residence for his mother and sisters as aforesaid, in accordance with my wishes, then I give and devise unto my said grandson, John Hunter, his heirs and assigns forever, Hunter's Island aforesaid, Hart Island and the Provoost farm, all in the said town of Pelham, with the buildings and appurtenances thereto belonging, from and after the death of my said son: and also a right of way with cattle and teams over the lane now used by me across my farm commonly called and known as the Sackett farm, situated in the said town of Pelham, opposite Hunter's Island and between the farms of Mr. Thatcher and Elbert Roosevelt, and also a right of way from the said lane, through the woods of said Sackett farm, to and from the said Provoost farm. But in case my said grandson should survive his said father and omit to make his election as aforesaid, then I order and direct my executors hereinafter named, and the survivor of them at their or his discretion, to sell and dispose of in fee simple, the said Hunter's Island, Hart Island and Provoost farm, with the right of way across and through the Sackett farm as aforesaid, at public or private sale for cash, or on credit, as may be deemed best; and upon making such sale, or sales, and receiving the purchase money or security for the same, I authorize and empower my said executors and the survivor of

them to execute and deliver to the purchaser or purchasers thereof good and valid deeds of conveyance for the same, in due form of law. And the net proceeds of such sales I direct to be divided into two equal parts, which I dispose of as follows : One equal part thereof I give and bequeath unto my said grandson John Hunter, absolutely forever; and the other equal part I give and bequeath unto his said three sisters, Elizabeth, Ann and Adele, and their legal representatives, share and share alike, forever. But should my said grandson die before his said father, leaving lawful issue, then on the death of my said son, I direct my said executors to sell the said Hunter's Island, Hart Island and Provoost farm, with the right of way as aforesaid ; and the proceeds thereof I give and bequeath as follows : One-fourth part thereof to the issue of my said grandson, and one-fourth part thereof to each of my said grand daughters or their legal representatives absolutely, forever. And in case my said grandson should die before his said father, leaving no issue him surviving, then upon the death of my said son I give and devise the said Hunter's Island, Hart Island and Provoost farm, with the said right of way, to my said three granddaughters, Elizabeth, Ann and Adele, equally in fee. *Fifth.* I give and devise unto my said granddaughters Elizabeth D. Hunter, Ann M. Hunter and Adele Hunter, all my lands in great lot number. twenty-five (25) in the Hardenburgh patent lying in the county of Greene, and all my other lands in the said county of Greene, from and after the death of my said son, share and share alike forever. And also my said Sackett farm from and after the death of my said son, to be divided into three parts as follows : the first part being all that portion of said farm lying between the creek on the southerly side, the farm of Mr. Thatcher on the westerly side, my Provoost farm on the northerly side, and a straight line to be run from the said creek up to and through the center of the lane leading through said Sackett farm to the said Provoost farm, containing by estimation fifty acres of land, I give and devise to my said granddaughter Ann M. Hunter, her heirs and assigns forever, from and after the death of my said son, subject to the right of way as aforesaid. All that portion

of said Sackett farm, containing by estimation fifty acres, and lying between the easterly line of the piece hereby devised to my said granddaughter Ann, and a straight line to be run northerly and southerly through the said Sackett farm, from the said creek to the Provoost farm, so as to divide the residue of said Sackett farm into two equal parts, I give and devise to my said granddaughter Elizabeth D. Hunter, her heirs and assigns forever, from and after the death of my said son, subject to the right of way as aforesaid. And all that portion of my said Sackett farm lying between the easterly line of the piece hereby devised to my said granddaughter Elizabeth, and the farm or land of Elbert Roosevelt, containing by estimation fifty acres, I give and devise to my said granddaughter Adele Hunter, her heirs and assigns forever, from and after the death of my said son. In case any of my granddaughters should die before the termination of the life estate of my said son, leaving lawful issue or lineal descendants her surviving, then I give and devise to such lawful issue or lineal descendants, the same share which the mother would have taken if she had lived. And in case any of my said granddaughters should die without leaving lawful issue or lineal descendants, then the share of the one so dying shall be divided equally between her surviving sisters and the issue of such of them as may then be dead. *Sixth.* I give and devise to my said granddaughter Elizabeth D. Hunter, in fee from and after the death of my said son, my house and lot number seventy-two, (72,) Walker-street, in the city of New-York, purchased from the estate of the late Peter Jay Munro. In case the said Elizabeth should die before the termination of the life estate of my said son, leaving lawful issue or lineal descendants her surviving, then I give and devise the said house and lot to such lawful issue or lineal descendants. But should the said Elizabeth die before the termination of such life estate, leaving no issue or lineal descendants her surviving, then I give and devise the said house and lot, after the death of my said son, unto my granddaughters Ann and Adele, or such of them as shall be living at the death of my said son, and the issue of such of them as may then be dead. *Seventh.* I give and devise to my said grand-

daughter, Ann M. Hunter, in fee, from and after the death of my said son, my house and lot number seventy-four (74) Walker-street in the city of New-York, purchased from the estate of the late Peter Jay Munro. In case the said Ann should die before the termination of the life estate of my said son, leaving lawful issue or lineal descendants her surviving, then I give and devise the said house and lot to such lawful issue, or lineal descendants. But should the said Ann die before the termination of such life estate, leaving no issue or lineal descendants her surviving, then I give and devise the said house and lot, after the death of my said son, unto my granddaughters Elizabeth and Adele, or such of them as shall be living at the death of my said son, and the issue of such of them as may then be dead. *Eighth.* I give and devise unto my said granddaughter Adele Hunter, in fee from and after the death of my said son, two of my houses and lots in Elm-street, in the city of New-York, described in a conveyance to me therefor, as numbers eighty-five (85) and ninety-one (91). In case the said Adele should die before the termination of the life estate of my said son, leaving lawful issue or lineal descendants her surviving, then I give and devise the said houses and lots to such lawful issue or lineal descendants. But should the said Adele die before the termination of such life estate, leaving no issue or lineal descendants her surviving, then I give and devise the said houses and lots, after the death of my said son, unto my granddaughters Elizabeth and Ann, or such of them as shall be living at the death of my said son, and the issue of such of them as may then be dead. *Ninth.* I give and bequeath unto my said grandson John Hunter, all my stock in the Westchester County Bank, all my stock in the Tanners' Bank at Catskill, and all such bonds and mortgages and other securities and moneys which may be in the hands of my friend James Powers, Esquire, at the time of my decease; *subject, however, to the payment of the legacies hereinafter given to his sisters,* and subject also to such costs and charges as may exist against the same. And I do also hereby ratify and confirm the gift heretofore made by me to my said grandson, of a certain bond and mortgage upon lands in Newtown, Queens

county, executed by my brother Robert R. Hunter, unto me. To have and to hold the said bond and mortgage with the moneys due and to grow due thereon, unto my said grandson, for his own use absolutely forever. *Tenth.* I give and devise all the lands I own throughout the state purchased at tax sales, or obtained from my brother Robert R. Hunter, or from the assignees of John Kiersted, except my lands in the county of Sullivan, unto my said granddaughters, Elizabeth, Ann and Adele, share and share alike, forever; which lands I hereby authorize and empower my executors, or whoever shall execute this will, to sell at public or private sale, in their or his discretion, and to execute good and valid deeds of conveyance for the same : and to invest the proceeds of such sales on bond and mortgage, on unincumbered real estate of double the value of the sum so invested, for the benefit of my said granddaughters. *Eleventh.* I give and bequeath unto my said granddaughters, Elizabeth, Ann and Adele, each the sum of twenty thousand dollars, and I direct the same to be paid to them immediately after my decease, out of my personal estate. *Twelfth.* I give and bequeath unto my said grandson John Hunter, from and after the decease of my said son, all my plate, books, and pictures, household furniture, horses, carriages, harness, farming utensils and stock, on my farms. *Thirteenth.* I give and devise unto Mary Mills, now residing with me, the use and enjoyment of the island, formerly called Hog Island, purchased by me from Captain Sheffield, and of the land purchased by me from Elbert Roosevelt, contiguous thereto, up to the post road, as long as she shall remain unmarried, and upon her death or marriage, I give and devise the same unto my grandson, John Hunter, forever. *Fourteenth.* I give and bequeath unto the said Mary Mills, an annuity of three hundred dollars a year, as long as she shall remain unmarried ; and I direct the same to be paid to her in half-yearly payments of $150 each, out of the income of my personal estate, any thing hereinbefore contained to the contrary notwithstanding. *Fifteenth.* It is my will that all my grandchildren be liberally educated. I do therefore direct my executors, or whoever shall execute this will, to have them educated in the best manner, out of the income

of my estate ; and I do hereby charge the expenses thereof upon such income, any thing herein before contained, to the contrary notwithstanding. *Sixteenth.* I do hereby authorize and empower my executors or whoever shall execute this will, to sell and dispose of my bank and other stocks, as he or they may think proper, and in case of a sale of any part thereof, I direct the proceeds of the stock so sold, to be immediately invested upon bond and mortgage, on unincumbered real estate, of double the value of the sum invested, for the benefit of the legatees thereof, under this my will. *Seventeenth.* All the rest, residue and remainder of my real estate, not hereinbefore otherwise disposed of, I give and devise to my said grandson, John Hunter, subject to the life estate of his father, in fee simple forever. And in case he should die before the termination of his father's life estate, leaving lawful issue, or lineal descendants him surviving, then I give and devise the said residue of my real estate, from and after the death of my son, unto such lawful issue or lineal descendants. But should my said grandson die before the termination of said life estate, leaving no lawful issue or lineal descendants him surviving, then I give and devise the said residue of my real estate unto my said three granddaughters and the issue of such of them as may then be dead, in representation of its deceased parent, share and share alike, forever. *Eighteenth.* All the rest, residue and remainder of my personal estate not hereinbefore otherwise disposed of, I give and bequeath unto my said grandson and granddaughters or their legal representatives, from and after the death of my said son, equally, share and share alike, forever. *Nineteenth.* I hereby nominate, constitute and appoint my son Elias Desbrosses Hunter, and my said grandson John Hunter, the executors of this my will ; and in case the said John Hunter should die before his father, then I appoint my said granddaughter Elizabeth D. Hunter as an executrix of this my will, in his place. *Twentieth.* I direct and request my said son to pay all taxes and assessments, which may from time to time be imposed upon the real and personal estate, the use of which I have given to him during his natural life. And inasmuch as my son is the natural guardian of his children, it is my will and

desire that he, as my executor, should continue and be during their respective minorities the trustee of the estates and interests which I have given unto my said grandson and granddaughters. *Twenty-first.* Whereas many contracts for the sale of portions of my real estate may be made by me in my lifetime, and remain unperformed at my decease, I do therefore authorize and empower my executors or whoever shall execute my will, to carry such contracts into effect, and perform the conditions thereof as fully as I could do if living ; and to execute and deliver to the persons with whom such contracts have been made by me, good and sufficient deeds for such lands and premises. And the proceeds of such contracts and sales shall be invested by my executors or whoever shall execute my will, on bond and mortgage for the benefit of the *devisees* thereof, under this my will, in the same manner as other investments are hereinbefore directed to be made. *Twenty-second.* I do hereby authorize and empower my executors, or whoever shall execute this will, to lease or sell such wild lands, as he or they may in their or his discretion think proper, and to execute good and sufficient deeds therefor, and to invest the proceeds of such sales on bond and mortgage, for the benefit of the devisees thereof, under this my will, in the same manner and with the like securities as other investments are hereinbefore directed to be made."

The complaint then alleged the making of a codicil to this will, by the testator, on the 8th of September, 1852, as follows : " Whereas I have in my said last will and testament, given to my grandson, John Hunter, his election in a certain contingency, either to remain in the occupation of the Bayard farm or to remove to Hunter's Island, where I now reside. Now, therefore, in case my said grandson, John Hunter, shall make his election on the happening of the contingency aforesaid, to remove to Hunter's Island, then I order and direct my said grandson, John Hunter, to execute to his sisters, Elizabeth D. Hunter, Ann M. Hunter and Adele Hunter, a conveyance in fee simple of the said Bayard farm, with its appurtenances, subject to the use and occupation thereof by his mother and his said sisters so long as they respectively remain single and unmarried; and if any of

them are then dead or married, then subject to the use and occupation thereof by the survivors or residue of them so long as they respectively remain single and unmarried—the survivor or survivors to remain in and have the use and occupation thereof so long as they respectively remain single and unmarried. And whereas I have in my said last will and testament, devised large real estate to my said grandson, John Hunter, now therefore, in case the said John Hunter, (my grandson,) shall die without leaving any lawful children or descendants at the time of his death, I give, devise and bequeath all and every part and portion of said real estates to my said granddaughters, Elizabeth D. Hunter, Ann M. Hunter and Adele Hunter, their heirs and assigns forever. And whereas I have in the twenty-first clause or section of my said last will and testament, conferred certain powers and imposed certain duties upon my executors, or the person or persons executing my will, in regard to certain contracts for the sale of portions of my real estate, and the proceeds and investment of the avails thereof:—Now therefore, I desire to make the subjects of that clause or section, and the powers and duties of the persons executing my will in relation thereto, more clear and comprehensive ; and I desire to embrace, and do hereby include within the operation of that clause or section, all contracts for the sale of portions of my real estate, whether made before or after the date and execution of said will, or before or after (at any time during my life) the date and execution of this codicil thereto, and I desire to confer and impose, and do hereby confer and impose, the same powers and duties in relation thereto upon the survivor or survivors of my executors that I have therein conferred or imposed upon my executors, or whoever shall execute my will. And whereas some or all of said contracts do or may embrace covenants or conditions in regard to said lands, on my part to be fulfilled, performed and kept, now therefore, I desire and direct my said executors, or the survivor or survivors of them, or whoever may execute my said will and this codicil, to fulfill, perform and keep such covenants and conditions, so far as it may be lawful for them to do so in their said character of executors or persons executing my will,

and so far as it may be lawful and proper for them as such executors or persons executing my will to do so, to insert in the instruments and conveyances to be executed by them the necessary covenants and conditions to carry out and effectuate the said contracts, and the covenants, conditions and provisions thereof, and so far as it may be lawful and proper for them to do so in the character aforesaid, and without incurring personal liability in that behalf, to bind my estate and assets to the performance and execution of such covenants and conditions—intending hereby to confer upon them full power and authority to execute and carry out said contracts in the same manner, and to the same extent, as I might, could or ought to do if living. And whereas I have heretofore paid, or agreed to pay, and am or hereafter may be liable to pay, certain costs, counsel fees and expenses in establishing or defending the line between the Hardenburgh patent and the Rochester patent, and also in establishing or defending my title to great lots Nos. 4 and 5 in the Hardenburgh patent, in and by my said will devised to my said grandson, John Hunter, now therefore, it is my will and intention, and I do hereby order and direct that my said grandson, John Hunter, shall be liable for and pay all of said costs, counsel fees and expenses for which I am or hereafter may be so liable for as aforesaid, and also all such as I have heretofore paid or may hereafter pay, or become obligated to pay in my lifetime."

The complaint then alleged that on the 25th day of September, 1852, the said will and codicil were duly admitted to probate, and proved and recorded as a will, both of real and personal property, before the surrogate of the county of Westchester, where the said John Hunter resided, at the time of his death, and at the same time letters testamentary thereon were granted to the plaintiff alone, the other executor named therein, to wit, John Hunter, jun. then and still being under the age of twenty-one years. And the plaintiff further stated that the said John Hunter, deceased, at the time of his death, died without leaving any widow, and without leaving any next of kin or heirs at law him surviving, except the plaintiff, Elias D. Hunter, who is the son of the said John Hunter, deceased. And the plaintiff fur-

ther stated that various questions had arisen as to the validity and as to the true intent, meaning and construction of various devises, bequests and provisions contained in the said will and codicil, and as to the legal effect thereof, and as to the disposition and appropriation of the property of the said John Hunter in pursuance thereof, and as to the nature and extent of the interest and estate of the said John Hunter, in the property and moneys therein devised, bequeathed and disposed of, and as to the personal estate and assets, which, under the provisions of said will, should go upon the inventory of, and be accounted and estimated as part of the personal estate and assets of the said John Hunter, deceased, and that the plaintiff, both in his individual and representative capacity as executor of the last will and testament of the said John Hunter, deceased, was embarrassed in the execution of his duty and apprehensive that he might make mistakes and incur hazard and responsibility in the disposition of the property under said will and codicil, and the plaintiff believed and charged that it was important and necessary that said questions should be judicially determined, and said provisions, devises and bequests receive a judicial construction, and that all parties interested, so far as the plaintiff had been enabled to ascertain, were willing and desirous to have the same construed and determined by the judgment of this court without delay, and that the interest of all parties required that the same should be done. And the plaintiff further stated that the said John Hunter, at the time of his death, was seised and possessed in his own right, and in that of his wife, of large real and personal estates, the same or a part thereof lying and being in several counties in this state, and among others in the counties of Westchester, Albany, Broome, Cattaraugus, Chautauque, Chemung, Chenango, Clinton, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Monroe, Niagara, Oneida, Onondaga, Orange, Ontario, Otsego, Oswego, Rensselaer, Richmond, Rockland, Schoharie, Saratoga, Seneca, Steuben, Sullivan, Tioga, Ulster, Warren, Washington, Wayne, and Yates, in the state of New-York. The plaintiff further stated that he was informed and believed that a question arose

upon the legal effect and true construction to be given to the second clause of the said last will and testament, which is as follows, viz. " *Second.* I give, devise and bequeath unto my son Elias Desbrosses Hunter, his heirs and assigns forever, all my land in great lot forty-one (41) of the Hardenburgh patent in Delaware county : my lot number eleven (11) in the town of Mamakating in Sullivan county : my house and lot of ground in Batavia-street or lane in the city of New-York : my two houses and lots of ground in Cherry-street in said city : my two houses and lots of ground in Water-street in said city : and my store and lot of ground in Front-street in said city : which property formerly belonged to my wife and has been in the possession of my said son for many years. And I also give, devise and bequeath unto my said son, for and during his natural life, the use, possession, income and profits of the residue of my estate, real and personal, not hereinafter otherwise expressly disposed of."

The plaintiff further stated that said lots Nos. 41 and 11 mentioned in said clause of the will, and all the estate, right, title and interest therein, formerly belonged to James Desbrosses, late of the city of New York, deceased, who executed leases in perpetuity of portions thereof, said leases reserving rents and containing other covenants and conditions on the part of the lessees and their assigns. That on the death of said James Desbrosses, intestate, which took place on or about the first day of July, 1807, the same and all his right, title and interest, passed by the laws of inheritance and descent to his two daughters and only heirs at law, Charlotte, the wife of Henry Overing, and Elizabeth, the wife of the said John Hunter. After which time and on or about the 12th day of February, 1811, partition thereof was duly made, between the said Henry Overing and wife, of the one part, and the said John Hunter and wife, of the other part. Subsequent to which, the parts and portions thereof assigned and conveyed to them respectively, have been held and enjoyed by them separately and severally, together with the rights and interests in said rents and leases respectively, whereby the said John Hunter and wife became seised in severalty, (in right of the said Elizabeth,) of the southeastern part of said lot No. 41,

and also the whole of said great lot No. 11, of the Hardenburgh patent. After which time, and on or about the 1st day of May, 1811, the said John Hunter and Elizabeth his wife, by a deed of trust of that date, conveyed the said premises and real estate and all their right, title and interest therein to Gabriel V. Ludlow, of the city of New-York, a copy of which deed is here given.

" This indenture, made the first day of May, in the year of our Lord one thousand eight hundred and eleven, between John Hunter, of the city of New-York, gentleman, and Elizabeth his wife, of the first part, and Gabriel V. Ludlow of the same place, counselor at law of the second part. Whereas the said Elizabeth, wife of the said John Hunter was entitled, as one of the daughters of James Desbrosses, late of the city of New-York, gentleman, deceased, to one equal moiety or half part of all the real estate in the State of New-York, whereof, the said James Desbrosses died seised, which said real estate has descended to the said Elizabeth and her sister Charlotte Overing, equally as heirs of the said James Desbrosses, part whereof has been since divided between them, and other parts remain undivided. And whereas, it is the intention of the said John and Elizabeth to revoke the settlement in trust of the same premises intended to have been created by two several deeds, made by and between the said John and Elizabeth, and James McEvers as the mesne trustee, which said deeds were never completed by delivery, and are hereby declared to be revoked and canceled, and that a settlement of the estate, interest, right and title of the said Elizabeth in and to the said real estate should be now made upon such particular trusts as shall be declared in a deed bearing even date herewith and to be made between the said Gabriel V. Ludlow of the first part and the said John Hunter of the second part. Now therefore, this indenture witnesseth, that the said John Hunter and Elizabeth his wife, for and in consideration of the sum of one dollar to them in hand paid by the said Gabriel V. Ludlow, at or before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, and the said Gabriel V. Ludlow, his heirs, executors, and administrators forever released and discharged from the same by these presents, have

Hunter *v.* Hunter.

granted, bargained, sold, aliened, enfeoffed, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, convey and confirm unto the said Gabriel V. Ludlow, all and singular, her, the said Elizabeth's share, right and proportion, whether divided or undivided, of all the real estate in the state of New-York, whereof the said James Desbrosses died seised, and to which the said Elizabeth is or may be entitled as aforesaid, with the rights, members, hereditaments and appurtenances, subject to such divisions, partitions and releases as may heretofore have been made of parts thereof, by the said John and Elizabeth, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all and singular the estate, right, title, interest, property, claim and demand whatsoever, both in law and equity of the said John and Elizabeth, of, in and to the said real estate, and every or any part thereof, with the appurtenances, or to which the said Elizabeth now or hereafter shall or may be any way entitled to as one of the heirs or devisees of the said James Desbrosses.   To have and to hold the same unto the said Gabriel V. Ludlow, his heirs and assigns, to and for the several uses, intents and purposes to be hereafter declared as aforesaid.   In witness," &c.

The complaint alleged that on the same day, and immediately afterwards, the said Gabriel V. Ludlow reconveyed the same and all his right, title and interest therein, by another deed of trust of that date, to the said John Hunter, a copy of which last mentioned deed is here given.

"This indenture, made the first day of May, A. D. 1811, between Gabriel V. Ludlow, of the city of New-York, counselor at law, of the first part, and John Hunter, of the same place, gentleman, of the second part.   Whereas by a deed bearing even date herewith, and made between the said John Hunter and Elizabeth his wife, of the first part, and Gabriel V. Ludlow of the second part, conveying the premises hereinafter mentioned to the said Gabriel V. Ludlow, for the purposes in this deed expressed and recited.   That whereas the said Elizabeth, wife of the said John Hunter, was entitled, as one of the daughters of James Desbrosses, late of the city of New-York, gentleman, de-

ceased, to one equal moiety or half part of all the real estate in the state of New-York, whereof the said James Desbrosses died seised, which said real estate has descended to the said Elizabeth and her sister Charlotte Overing equally, as heirs of the said James Desbrosses, part whereof has been since divided between them, and other parts remain undivided. And whereas, it is the intention of the said John and Elizabeth to revoke the settlement in trust of the same premises intended to have been created by two several deeds, made by and between the said John and Elizabeth and James McEvers as the mesne trustee, which said deeds were never completed by delivery, and are hereby declared to be revoked and canceled. And that a settlement of the estate, interest, right and title of the said Elizabeth in and to the said real estate, should be now made upon such particular trusts as shall be declared in a deed bearing even date herewith, and to be made between the said Gabriel V. Ludlow of the first part, and the said John Hunter of the second part. Now therefore this indenture witnesseth that the said Gabriel V. Ludlow, in consideration of one dollar to him in hand paid by the said John Hunter, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the said John Hunter, his heirs, executors and administrators therefrom released and forever discharged, has granted, bargained, sold, aliened, released, enfeoffed, conveyed, quitclaimed and confirmed, and by these presents doth grant, bargain, sell, alien, release, enfeoff, convey, quitclaim and absolutely confirm unto the said John Hunter all and singular the estate conveyed to him, the said Gabriel V. Ludlow, by the aforesaid deed, being all her, the said Elizabeth's share or right whether divided or undivided of all the real estate in the state of New-York, whereof the said James Desbrosses died seised, and to which the said Elizabeth was entitled as aforesaid. And all and singular the estate, right, title, interest, property, claim and demand whatsoever, both in law and equity of the said John Hunter and Elizabeth his wife, of, in and to the said real estate and every or any part thereof, with the appurtenances, or to which the said Elizabeth then or at any time thereafter, could or might be any way entitled to as one of

the heirs or devisees of the said James Desbrosses, with the rights, members, hereditaments. and appurtenances subject to such divisions, partitions or releases as may heretofore have been made of any parts thereof, by the said John and Elizabeth, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. Together with all the estate, right, title, interest, property, claim and demand of him the said Gabriel V. Ludlow, of, in and to the same. To have and to hold unto the said John Hunter, his heirs and assigns, to the uses for the intent and purposes and under and subject to the several powers, provisions, limitations, declarations and agreements hereinafter limited, expressed, declared and contained of and concerning the same, that is to say, in trust, to and for the use, benefit and behoof of the said John and Elizabeth during their natural lives *and the life of the survivor* and *upon the death of both of them,* in trust as to the rents, issues and profits thereof, to and for the sole use, and benefit of Elias Desbrosses Hunter, the present son of the said John and Elizabeth, until he shall attain the age of twenty one years, and upon his attaining the age of twenty-one years then to stand seised of all the said estate, to and for the sole use benefit and behoof of the said Elias Desbrosses Hunter, his heirs and assigns, in fee simple forever, without any further trust of and concerning the same. But in case the said Elias Desbrosses Hunter should die before he attains the age of twenty-one years as aforesaid, or before the expiration of the natural lives of the said John and Elizabeth, then in trust as to all the said estate to and for the said John Hunter, his heirs and assigns, in fee simple forever. Subject to the right, title, and interest of the said Elizabeth as aforesaid, for and during her natural life, if she should be then living. And it is hereby provided and declared that it shall and may be lawful for the said John Hunter, his heirs or assigns, or the guardian of such heir or heirs being minors, at any time or times during the continuance of this trust, to make any divisions or partitions of all and singular the estate, lands, tenements, hereditaments, premises and appurtenances hereinbefore mentioned, or of any parts thereof, and upon such divisions or partitions to make, sign, execute and deliver all such

conveyances, releases and assurances thereof and of every part or parts thereof as may be necessary and needful, and like conveyances and assurances for his or their parts to have, take and receive in the name of the said John Hunter, his heirs or assigns, or the guardians of such minor, subject however as to all such estate as shall be allotted to his or their share, upon such partition or division, to the trusts herein before declared and expressed.    And provided also that it shall and may be lawful for the said John Hunter, his heirs or assigns, or the guardians of such heir or heirs as shall be minors at any time or times during the continuance of the said trust, to levy any fine or fines, *and to make sales*, conveyances or leases, of all or any part of the said estate, for such considerations, terms, times, rents, provisoes, conditions, covenants and clause of re-entry, as he or they may think proper, *subject nevertheless as to all and singular the considerations, rents, issues and profits thereof, to the aforesaid trusts*, and provided that it is hereby reserved to the said John and Elizabeth *jointly*, during their lives, and to the said John if he *survives* his wife, in writing to alter, revoke or change all or any of the trusts in this deed contained, and provided further, that as to all and singular such part of the said estate, hereditaments and premises as are situate in the city and county of New-York, the said John Hunter shall have power in his lifetime, with the consent of the said Elizabeth, to sell or otherwise dispose of the same or any part or parts thereof, in fee simple forever, discharged of any of the trusts above declared, and to have, take and retain the proceeds thereof to the use of him the said John Hunter, his executors, administrators and assigns, without any account of and concerning the same.   In witness," &c.

The plaintiff further alleged that portions of said lots, Nos. 41 and 11, were never leased or sold, and were now held and enjoyed under the title of said James Desbrosses, deceased, and under said partition deeds between said Overing and wife, and Hunter and wife, and said deeds of trust from the said Hunter and wife to the said Gabriel V. Ludlow, and from the said Ludlow to the said Hunter.    That other portions thereof, which were never under lease, had been since the said trust deeds to and from said

Ludlow took effect, sold and conveyed by the said John Hunter, and portions of the purchase money received by the said John Hunter in his lifetime, and other portions thereof still remain unpaid. That other portions of said lots were leased in perpetuity by the said James Desbrosses subject to certain rents, covenants and conditions, and still remain subject to said leases, the rents accruing under which had been in part paid to the said John Hunter in his lifetime, and a part thereof accrued in the lifetime of the said John Hunter still remained due and unpaid. That other portions still thereof had been since said trust deeds to and from Ludlow took effect, leased by said John Hunter in perpetuity, subject to certain rents, covenants, and conditions, and still remain subject to said leases and, the rents thereof in part received by the said John Hunter in his lifetime, and a part thereof accrued during the lifetime of the said John Hunter still remain due and unpaid. That other portions thereof, thus leased by the said James Desbrosses and the said John Hunter, have been since said trust deeds took effect, put under contract by the said John Hunter for the extinguishment of the said rents, covenants and conditions, and portions of the consideration money therefor, in part received by the said John Hunter, and other portions thereof, falling due in the lifetime of the said John Hunter, still remain due and unpaid. That other portions thereof, including as well lands so leased, as lands not under lease, have been contracted to be sold by the said John Hunter since said trust deeds took effect, (but had not been conveyed,) and portions of the consideration money of said contracts had been received by the said John Hunter in his lifetime, and portions thereof falling due in his lifetime, still remain due and unpaid. And the plaintiff further stated that his mother, Elizabeth, the wife of the said John Hunter, died on or about the 19th day of February, 1831, and that the plaintiff, Elias D. Hunter, became 21 years of age on the 20th day of April, 1821. That the plaintiff was advised and believed that serious and important questions arise under said second clause in said will, and under said trust deeds to and from said Ludlow, and call for a judicial construction thereof, and that among said questions were the following:

(1.) Whether by the trust deed from Gabriel V. Ludlow to John Hunter, the trust therein mentioned terminated with the minority of the plaintiff, Elias D. Hunter, and whether the said Elias D. Hunter, on his attaining his majority became seised in fee of said lands, and was entitled to the possession thereof, and to the rents, issues and profits thereof, from and after that period, and whether the estate of the said John Hunter is liable to the plaintiff for all rents, issues and profits received, or which might have been received from the said premises since the period last aforesaid, with the interest, and also for the proceeds of the sales of such portions of said premises as were sold and conveyed or contracted to be sold by him in his lifetime, and received by the said John Hunter, and also those still remaining due and unpaid. (2.) Whether under the provisions of the said trust deed, the sales of portions of said premises by the said John Hunter in his lifetime, and the contracts for sales of other portions thereof, and for the extinguishment of the rents of other portions thereof constituted an alteration, revocation or change of all or any of the said trusts, and if so, what is the nature and effect of such alteration, revocation or change. (3.) Whether the said John Hunter had any, (and if so, what,) interest and estate in and any, (and if so, what,) power to dispose of the said lands by his last will and testament as aforesaid, or otherwise, so as to vest the title thereto, and what title in his devisee or how otherwise, or whether the same do not belong absolutely under the provisions of said trust deeds to the said plaintiff, Elias D. Hunter. (4.) Whether in case the said John Hunter, deceased, had any estate or interest in said lands, in lots 41 and 11, or in the rents, issues and profits thereof, the same passed by the terms of said will to his devisee or legatee, and especially whether the terms *lands and lots* in the second clause of the second will, would be and are effectual to pass his right, title and interest therein. (5.) Whether in case the said John Hunter had a devisable estate and interest therein, the devise in fee to the said Elias D. Hunter, was operative and effectual as to so much, and such parts of said lots, Nos. 41 and 11, as were held under leases in fee, reserving rents to the said John Hunter, his heirs and assigns,

and whether such estate and interest passed to the devisee under the term *lands*.  And also as to such portions thereof as are held under leases in fee, reserving rents, and are *under contract* from the said John Hunter to the lessees or their assigns or other persons, *for the sale or extinguishment* of the rents, whether the devise to said Elias D. Hunter, in said second clause, is operative and effectual to embrace the same, and to pass to said devisee the said John Hunter's interest therein. And also as to those portions thereof not under lease, but under contract from the said John Hunter for the sale thereof, and where moneys are due and to grow due thereon, whether in case of a forfeiture or non-performance of the conditions of said contracts by the vendor, the devisee, Elias D. Hunter, is entitled to take advantage of said forfeiture, and claim said lands under said devise, or whether said contracts are validated and affirmed by the provisions of said will and codicil; and also whether, in case said contracts are not forfeited, and also as to such as remain in force without forfeiture, whether the interest of John Hunter in said lands and in said contracts, was lands and real estate passing to Elias D. Hunter as devisee thereof, or personal property; and whether, if personal property, they would pass into the general fund or residuum of personal estate mentioned in the will and to the legatees thereof, or whether they would be saved and pass to the devisee, Elias D. Hunter, under the 2d and 21st clauses of said will, or how otherwise.

And the plaintiff further stated, that he was advised that a question also arises under the third clause of the said will, in connection with other clauses thereof, and in connection with the deeds and conveyances in trust, under which the said lots, Nos. 4 and 5, are held, as to the nature and extent of the title of the said John Hunter, jun. therein, and as to the period when the same shall vest, and whether the same is an absolute and indefeasible estate in fee simple or otherwise; and whether the same is or is not liable to be defeated, and upon what contingency or event; and in the event of its being so defeated or ceasing, in whom the same will then vest.  The plaintiff further stated that the gift to the testator's grandson, John Hunter, of the testator's

land in great lots number 4 and 5 of the Hardenburgh patent, lying in the said county of Sullivan, mentioned and referred to in the third clause of the will arose, and was as follows : On the 6th day of November, 1846, John Hunter, Elias D. Hunter and Ann M. his wife, by deed of that date conveyed to John Hunter, jun. the devisee, then and still being an infant, in consideration of $10 and natural love and affection, the said lots Nos. 4 and 5, subject to such reservations, conveyances, leases or contracts for the sale or leasing thereof as already existed, or might be made by John Hunter or Elias D. Hunter, pursuant to an instrument executed by them, said John and E. D. Hunter, of even date and thereto annexed. To have and to hold to said John Hunter, jun. his heirs and assigns forever, subject as aforesaid. That the instrument thereto annexed was a declaration of trust, or of uses, of the same date, executed by the said John Hunter, Elias D. Hunter and Ann M. his wife. That the said deed and declaration of trust or of uses were and had been ever since the date of the same, in the hands of James Powers, Esq. of Catskill, pursuant to the terms thereof. The declaration of trust, after reciting the execution of the deed, proceeded as follows : " And whereas the said deeds of conveyance, together with this instrument, is placed in the hands of James Powers, as an escrow to be delivered by him to the said John Hunter, jun. when he attains the age of twenty-five years and not before. And in case the said John Hunter, jun. should die before he arrives to that age, without leaving lawful issue, then the said deed of conveyance to be canceled and destroyed, so as to be of no force or effect. The said John Hunter retains and reserves to himself, until the said John Hunter, jun. shall attain the age aforesaid, (provided he, the said John Hunter should live to that period of time,) the entire and absolute control and management of the said lands so conveyed as aforesaid. Also the right, power and authority to lease or sell all or any of said lands, and such as may be sold to convey the same. Also the right, power and authority to collect, compromise and receive all the rents which are due, or which may be due hereafter, on or growing out of the said lands, or any part thereof. Also the right, power

and authority to collect and receive all moneys on contracts for the sale of said lands, which are now made, or which he may hereafter make, as also all moneys on bonds and mortgages taken, or to be taken on the sale of said lands, or any part thereof, or on notes or other demands of any name and character, arising out of the said lands, which moneys when received and collected upon all or any of the aforesaid specified securities are to be invested as soon as may be convenient and practicable by the said John Hunter in bonds and mortgages or stocks of the state of New-York, or of the United States, after deducting therefrom the amount and interest thereon of the taxes and assessments paid on said lands for the *benefit and use of the said John Hunter, jun.* provided he attains the age aforesaid, and not otherwise, and in case the said John Hunter should die before the said John Hunter, jun. arrives at the age aforesaid, then the said Elias D. Hunter, with the consent and authority of the said John Hunter hereby given shall have all the right, power, and authority hereinbefore enumerated and defined, which is reserved to the said John Hunter over the said lands, and the moneys collected on the securities aforesaid, and to invest the same as aforesaid for the purpose aforesaid, and to lease, sell and convey the same in the same manner as is hereinbefore reserved to the said John Hunter, the rents and proceeds thereof to be invested by the said Elias D. Hunter in the securities before mentioned, for the benefit of the said John Hunter, junior. And should the said John Hunter, jun. attain the age aforesaid, then the said deed of conveyance to be delivered to him, as also all of the aforesaid securities arising out of the said lands, as also the bonds, mortgages and stocks shall be assigned over, and delivered to the said John Hunter, jun. But in case the said John Hunter, jun. shall die before attaining the age aforesaid, without leaving lawful issue, then the said lands conveyed as aforesaid, or such as shall remain unsold, and all the securities aforesaid, shall remain and belong to the said Elias D. Hunter, unless otherwise disposed of by the said John Hunter in and by his last will and testament. But should the said John Hunter, jun. marry with the consent of his parents before attaining the age

of twenty-five years, and have lawful issue, and shall die before attaining that age, then the said lands embraced in the said deed of conveyance, or such part thereof as shall remain unsold, together with such as shall be under leases or contracts of sale, (subject to such leases and contracts,) and all *rents*, moneys and securities to be held and taken as hereinbefore mentioned, for the benefit of the said John Hunter, jun. shall go to and belong to the children of the said John Hunter, jun. in equal proportions. And the said John Hunter further reserves to himself, and also to the said Elias D. Hunter—in case he the said John dies before the said John Hunter, jun. attains the age aforesaid—the absolute right, power and authority over said lands so conveyed, to prosecute for all trespasses or other wrongs and injuries, which have been or may hereafter be committed, or done upon the said lands ; and all other power and authority over said lands as may be necessary to take care of and preserve the said lands until the said John Hunter, jun. shall attain the age aforesaid. In witness," &c.

The plaintiff further stated that on or about the 15th day of April, 1852, the said John Hunter, jun. intermarried with Ann M. Middleton, and that they had lawful issue, viz. a son named Elias D. Hunter, jun. an infant, born on or about the first day of January, 1853. That portions of said lots, Nos. 4 and 5, were a part of the estate of the said James Desbrosses, deceased, and descended to his daughters and heirs at law, and on partition thereof, fell to the said John Hunter and Elizabeth his wife, who were seised thereof in right of the said Elizabeth. That a portion of the lands embraced in said lots, Nos. 4 and 5, had been in fact sold and conveyed by the said John Hunter and in some cases the proceeds of the sale realized ; in other cases partly realized by the said John Hunter, and partly still due and unpaid. That as to other portions thereof, contracts of sale had been made by the said John Hunter, but no conveyances executed, and the proceeds of sale in part realized by the said John Hunter and in part they remained still due and unpaid. That other portions thereof were under leases from the said James Desbrosses or the said John Hunter, in perpetuity, reserving rents ; and in some

cases contracts had been made by the said John Hunter for the sale or extinguishment of the rents of which the proceeds had in part been realized and in part remained due and unpaid. That other portions still remained unsold and were not under lease, and the allegations before made as to the title, seisin, possession, leasing, renting, sale and conveyance, contracts for sale, and for the extinguishment of rents and covenants, and conditions, and proceeds of sales, contracts and leases of portions of lots Nos. 41 and 11, were also applicable to portions of lots Nos. 4 and 5, and were equally true as to the latter. That the plaintiff was advised and believed that the same questions arose as to the effect and operation of said facts upon the said devise in the third clause of said will, as were before stated, in regard to the effect and operation thereof upon the devise in the second clause of said will, and required a judicial construction and determination for the settlement thereof. And that in addition thereto, the plaintiff was advised that certain other questions arose in regard to the said third clause aforesaid, and among others the following: (1.) Whether the ratification and confirmation of the gift and deed to John Hunter, jun. in the third clause of said will, has any (and if so, what) effect upon the estate and interest granted and conveyed by said deed and declaration of trust. And whether the provisions of said will vested the estate and interest therein in the said John Hunter, jun. on the death of the testator, or only on his attaining the age of 25 years. (2.) Whether in case the said John Hunter, jun. shall die before he attains the age of 25 years, and shall leave no lawful issue, living at the time of his death, the said property and estate will vest in his devisees or heirs at law, or under the provisions of said deed and declaration of trust in the said Elias D. Hunter, in fee or how otherwise. (3.) Whether the provision in said trust deed, that if John Hunter, jun. die before attaining the age of 25 years without leaving lawful issue, the said property and estate shall belong to the said Elias D. Hunter, unless otherwise disposed of by the will of John Hunter, has the effect upon the happening of said contingency of the death of said John Hunter, jun. without leaving lawful issue, before

the age of twenty-five years, of vesting the said property and estate in the said Elias D. Hunter, absolutely, or whether under the operation of the third clause of the will aforesaid of the devise of all the testator's other lands in Sullivan, except those devised in the second clause to his son Elias D. Hunter, and of the 17th clause of the said will of all the rest, residue and remainder of the testator's real estate to the said John Hunter, jun. not in the said will otherwise disposed of, the said John Hunter, jun. took the said property absolutely, notwithstanding the limitations and restrictions in said deed and declaration of trust.

And the plaintiff further stated that he was advised and believed that a question also arose under the 5th clause of the said will, important and necessary to be settled by judicial construction. And that as in regard to lots Nos. 41 and 11, 4 and 5, so in regard to lot 25, portions thereof were derived from the estate of James Desbrosses deceased, and the title of John Hunter therein was as was set forth under the second clause of the said will. That other portions thereof the said John Hunter had title to in his own right. That some portions of said lands were leased in fee with a reservation of rents; and that other portions, both of those under lease and those not under lease were under contract of sale, and for the extinguishment of rents therein—in some cases the contracts totally unperformed by the vendees—in other cases partly performed, and partly broken and unperformed—in some cases the proceeds of sale unpaid—in others paid—in others partly paid and partly unpaid. And that the same allegations as to the title, seisin, possession, leasing, renting, sale, conveyance, contracts for sale, and for the extinguishment of rents, convenants and conditions and proceeds of sales, contracts and leases, as were before made in regard to portions of lots Nos. 41, 11, 4 and 5, were equally applicable and true in reference to portions of lot No. 25. And in regard to these the plaintiff was advised the same questions arose as in regard to the second and third clauses of the said will, and which had previously in part been stated.

And the plaintiff further stated that said lot No. 25 contained ·

about 30,000 acres; that about 25,000 acres thereof lie and are situated in the county of Greene, and about 5000 acres thereof lie and are situated in the county of Ulster. And that he was advised and believed that a question arises under the said will, whether said devise in said 5th clause operated upon and embraced all the lands of lot No. 25, aforesaid, or only those lying in the county of Greene.

And the plaintiff further stated that he was advised and believed that a question arose under the 9th and 11th clauses of the said will, whether the legacies of $20,000 each, given and bequeathed to the testator's granddaughters Elizabeth, Ann and Adele, in the said 11th clause, were to be satisfied and paid out of the testator's personal estate generally, or the general residuum thereof, after the payment of specific legacies; or out of the particular fund or portion of said personal estate given and bequeathed to the said John Hunter, jun. in the said 9th clause of the will. And that a question arose under the 18th and 21st clauses of the said will, taken in connection with the 3d clause of the codicil, whether the proceeds of contracts for the sale of portions of the real estate of the testator, and for the sale and extinguishment of the rents and of the reversionary or other interest in lands of the testator which were under lease in perpetuity, for life or for years, were to be regarded as personal estate, and to pass to the legatees of said personal estate, or were to belong to and be invested for the benefit of the devisees of the respective lands, real estate or rents or other interest out of which said proceeds respectively arose.

The plaintiff further stated that the said John Hunter, jun. Elizabeth D. Hunter, Ann M. Hunter, Adele Hunter, and Elias D. Hunter, jun. were all infants under the age of 21 years, the said John Hunter, jun. of the age of about 20 years, and that they had no general guardian. And the plaintiff further stated that he believed it to be important to the due and speedy administration of the estate and effects of the said John Hunter, deceased, by said plaintiff as executor, and to the devisees and legatees named in the said will, and to his heirs at law and next of kin, and he prayed and demanded that the several matters aforesaid in re-

gard to the estate and property, and the said several instruments aforesaid, as to which doubts existed or questions had arisen, and all other matters in regard thereto, in reference to which any questions or doubts may exist or arise, should be judicially determined by this court in this action, and such direction, decree and judgment be thereupon made and given, as might finally settle and determine the rights of all the parties in interest in the said property, and in and to the estate, real and personal, of which the said John Hunter died seised, or possessed, and in and to every part thereof. And the plaintiff further prayed and demanded that the said defendants might answer the premises, and that this court should, by its determination, decree and judgment, give all necessary and proper directions for the due administration and disposition of the estate of the said John Hunter, deceased, and of the property aforesaid, in regard to the several particulars hereinbefore referred to, and in regard to any questions which might be raised by any of the parties, or which might arise in the case, or suggest themselves to this court, and for the passing and settling the accounts of said estate and executors from time to time, and for the costs of this action; and that this court should give such further or such other relief, judgment or decree, as the case might require.

General answers were put in by the several defendants; and the cause was referred to Leonard P. Miller, sole referee, to take proof of the facts and circumstances set forth in the pleadings, and to ascertain and report whether the matters set forth in the complaint were true, and to take proof of such other facts as should be in issue, or should be necessary to enable the court to render the proper judgment or decree. The referee reported that he had taken proof of all the matters referred to him, and had ascertained, and he found and reported that all the matters stated and set forth in the complaint were true except as thereafter particularly stated. He further certified and reported that James Desbrosses, in said complaint mentioned, died some time during the fall of the year 1807. That his two daughters and only heirs at law were (as set forth in said complaint) Charlotte Magdaline, the wife of Henry Overing, and Elizabeth, the wife

Hunter v. Hunter.

of the said John Hunter. That the said Charlotte Magdaline intermarried with the said Henry Overing some time in the year 1797; that the said Elizabeth intermarried with the said John Hunter on or about the 25th day of April, 1799. That the said Elizabeth departed this life on or about the 19th day of February, 1831; that Elias Desbrosses Hunter, the plaintiff in this action, was and is the only child and heir at law of the said John Hunter and Elizabeth his wife, and was born on or about the 24th day of April, 1800, and became 21 years of age on or about the 24th day of April, 1821; and that the said Elias Desbrosses Hunter intermarried with Ann M. Munroe, in April, 1832; and that the said Ann M., wife of the plaintiff, is still surviving; and their only children and heirs at law are as set forth in said complaint, viz : John Hunter, jun. born on or about the 23d day of February, 1833; Elizabeth D. Hunter, born on or about the 15th day of December, 1837; Anne M. Hunter, born on or about the 23d day of November, 1839; Adele Hunter, born on or about the 31st day of July, 1842; and that all of them were still infants and unmarried except the said John Hunter jun. who on or about the 1st day of April, 1852, intermarried with Anne M. Middleton, now the wife of the said John Hunter, jun. and whose only child and heir at law is the defendant Elias D. Hunter, jun. born on or about the first day of January, 1853. The referee further certified and reported that no portion of lot No. 4 of the Hardenburgh patent mentioned in the complaint and in the will of the said John Hunter, deceased, was derived from or was a part of the estate of James Desbrosses, deceased. That the said John Hunter was seised and possessed in his own right and in right of his wife of large real estates, as was stated in the complaint, and was also possessed in his own right of large personal estates, but whether so seised or possessed in right of his wife there was no proof before the referee to show, and the same did not appear. And that the value of the property affected by the construction of the said will of John Hunter, deceased, exceeded the value of one hundred thousand dollars.

Hunter v. Hunter.

*H. Hogeboom,* for the plaintiff.

FIRST.  *As to the Ludlow trust deeds.*  1. The trust deed from Ludlow to Hunter, would be invalid by the present law of uses and trusts, inasmuch as it suspends alienation for two lives and 21 years afterwards. (1 *R. S. 1st ed.* 723, §§ 14, 15, 16.)  Quere, is it not also invalid according to the law of trusts, existing prior to 1830.  2. This effect is not obviated by the authority conferred in the deed to make partition, sales, leases and conveyances, because the property divided, and the proceeds and rents of property sold, leased and conveyed, are declared to be *subject to the same trust,* and as the same rule applies to the suspense of the absolute ownership of personal property, as of the absolute power of alienation of real estate, the same consequences necessarily follow.  (1 *R. S.* 773, § 1, 2.)  3. The necessary consequence of the invalidity of this trust, is to leave the property as it was before the trust deed was executed, that is, as the property of Elizabeth, wife of John Hunter, and which by the laws of descent, necessarily vests in the plaintiff as her only child and heir at law.  4. But if the trust deed is valid, then we claim that by the proper construction thereof the fee simple was vested in Elias Desbrosses Hunter, on his becoming 21 years of age, whether John Hunter and wife, or either of them, were living or not. . . . 5. As a necessary consequence, the estate of John Hunter deceased is liable to the plaintiff, (1.) for all rents, issues and profits, which have been or might have been received by him since that time, with interest thereon ; (2.) also for the proceeds of all sales and conveyances or leases, whether paid or unpaid, with interest from the time such sales or conveyances or leases were actually made.  6. The *second* branch of the last proposition is also true, even if E. D. Hunter was not entitled *until after the death of his father and mother ;* because they are by the terms of the deed made expressly *subject to the aforesaid trusts.*  7. The authority reserved in the trust deed, to alter, revoke or change the trusts is void, as inconsistent with the trust, and necessarily defeating and nullifying it ; if valid, it has not been *practically exercised.*  The sales, conveyances, leases and partitions are

not a revocation or change, because they are *authorized by the terms of the trust*. The will is not a revocation or change, because it does not purport to be so ; because it does not in any way refer to the trust ; because the trust deed contemplated a *formal*, express and specific *revocation* or *change* if any ; and because the terms of the will can be satisfied without construing them to be a revocation or change. 8. If a revocation or change of the trusts has been accomplished in either of the above modes, then the result is that the property is thrown back into the estate of Elizabeth, wife of John Hunter, and passes by the laws of descent to the plaintiff and could not be disposed of by John Hunter. 9. If he had the power to dispose of it, he has not done so, by the terms of the residuary clause, for that does not embrace property, of which a previous disposition has been attempted to be made, but which has proved ineffectual. ( *VanKleeck* v. *Dutch Church*, 20 *Wend.* 457. *Kipp* v. *Van Cortland*, 7 *Hill*, 353, 354.) 10. As to all property which was derived from the estate of James Desbrosses, John Hunter had no estate or interest therein at the time of his death, and could not therefore dispose of it by will, 1. Because if the trust deed is valid, it is effectually disposed of thereby. 2. If it is void, then it descends to the *heir at law* (the plaintiff,) of Elizabeth Hunter.

SECOND. *As to the John Hunter, jun.* TRUST DEED. 1. This trust deed is *void*, because it has never been delivered, being left in *escrow*, and it cannot now or hereafter be delivered, because one of the grantors is dead. 2. If the trust deed is *void*, the property necessarily never passed out of the grantors, and hence so much of it as was derived from the estate of James Desbrosses, (which includes by far the greatest portion,) must necessarily be governed by the trust of 1811 ; or if that is invalid, then by the laws of descent it passed to the plaintiff. 3. Even if the trust deed is *valid*, no estate has passed out of the grantors ; because the deed has never yet been delivered or taken effect, hence the same result follows as mentioned in the last proposition. 4. Again, the trust deed is *void*, because there is an *illegal accumulation of rents and profits*, which

cannot by law exceed the period of *infancy*. (1 *R. S.* 726, § 37.) Also because they neither commenced *on* or *subsequent to*, (but *before*,) that is, from the date of the deed, the creation of the estate. The creation of the estate in this case is when John becomes 25. (*Id.* § 37, *subd.* 1, 2.) Also because the accumulation is not restricted for the benefit of *minors* in being (same authority,) but embraces an *adult*, (viz. E. D. Hunter,) and *unborn* children, (viz. E. D. Hunter, jun.) (*Hawley* v. *James*, 16 *Wend.* 116, 117, 157.) 5. As the deed cannot in any event take effect till John Hunter, jun. becomes 25, and as the rents and profits are *illegally* accumulated, (and not merely for an *excess* of time,) they are void by § 38, and necessarily pass to the plaintiff, either as heir at law, or under the *trust deed of* 1811—John Hunter has not disposed of them, and was incapable of doing so, even if he had attempted it, nor do they come within the operation of § 40, of 1 *R. S.* 726, (16 *Wend.* 134.) (1.) Because the rents and profits are not *undisposed of*. (2.) Because there is no *valid limitation* of an expectant estate. Clearly Elias D. Hunter must take the rents and profits between John's being 21 and 25 years of age, and as we claim, also *before* that time. 6. The rents, issues, and profits, the real estate and the proceeds of sales, conveyances and leases, are suspended as to the absolute ownership thereof, and the power of absolute alienation thereof, *illegally*, because they are expressly reserved for the benefit of John, jun. and *contingently* for the benefit of Elias D. Hunter, and the *unborn* children of John, for an *absolute* period of about twelve years, a term not measured by lives. (*Hawley* v. *James*, 16 *Wend.* 133, 171. *Yates* v. *Yates*, 9 *Barb.* 346;) notwithstanding a power of sale and control is reserved to the grantor, yet the whole fund is reserved for the *benefit* of John, jun. and his children, and E. D. Hunter—so that it cannot be diverted from that use, nor disposed of by the grantor. The trust deed and the accumulations being therefore both void, the whole deed fails and the property remains as it was before. 7. It is submitted whether the trust deed is not also void as being limited upon an indefinite failure of issue. 8. It will be observed,

1st. That the deed is an escrow, and to be delivered when John, jun. is 25, *and not before*, and hence the estate in the mean time does not pass to the grantee, but remains in the grantor; 2d. That if he dies before attaining that age without leaving lawful issue, the deed is to be destroyed, so as to be of no force or effect; 3d. That in the *same* contingency, the property is to belong to E. D. Hunter; 4th. That if he dies before 25, leaving lawful issue, the property is to belong to his children. Under these circumstances is not the deed *void* for *uncertainty* and *inconsistency*? or if not, has he any thing more than *contingency and possibility* of interest, and does not the estate in the meantime pass to the *heir at law* or *previous owner*? 9. The plaintiff will not be cut off by the phrase "unless otherwise disposed of by the said John Hunter in and by his last will and testament." (1.) Because this contemplates an express, direct and specific disposition of this very property, and by an express *reference* to the power of diposition thus reserved. (2.) Because the devise in the 3d clause to John, jun. of testator's *other* lands in Sullivan, expressly excludes No. 4 and 5 by the v*ery terms* thereof. (3.) Because the 17th clause, (the residuary devise) will not cover property specifically disposed of, though by a devise which is declared void and inoperative. (*Van Kleeck* v. *Dutch Church*, 20 *Wend.* 457. *Kip* v. *Van Cortland*, 7 *Hill*, 353.) 4. Because, unless there is a valid devise to some other person, the *heir at law* cannot be disinherited, even where there is an obvious intention on the part of the testator that he shall not take. (*Haxtun* v. *Corse*, 2 *Barb. Ch. R.* 521, 522. *Denn* v. *Gaskin, Cowp.* 657.)

THIRD. *As to the construction of the* WILL. I. As to the second clause of the will, and the deed to Ludlow, and the deed from Ludlow to Hunter, the more material questions are stated in the complaint, and the plaintiff claims—1. That by the terms of the trust deed the fee sinple was vested in Elias Desbrosses Hunter (plaintiff) on his becoming *twenty-one years of age*, whether John Hunter and wife were then living or not. 2. That as a necessary consequence thereof, the estate of John Hunter, deceased, is liable to the plaintiff for all rents, issues and profits

which have been or might have been received by him since that time, as also for the proceeds of all sales and conveyances, whether paid or unpaid. 3. That sales and contracts of sales of portions of said premises, or for the extinguishment of the rents, did not constitute an alteration, revocation or change of the trusts in said trust deed. 4. That John Hunter had not any interest or estate in said lands, (lots 41 and 11,) at the time of his death, and none which he had any power to dispose of by his last will and testament; the same having been fully covered and disposed of by the said trust deed. 5. That if he had any interest or estate therein, they passed by the comprehensive terms of the devise in the 2d clause of the will to the plaintiff; especially considering that the premises devised are spoken of as the *property*, formerly of his wife, and for many years in the possession of his son. 6. That the terms employed in said devise, are sufficiently comprehensive to embrace leases in fee, reserving rents; such being obviously the intention of the testator. 7. That they also embrace *contracts of sale* of said premises, and for the extinguishment of the rents, which is the same thing; especially as by the 21st clause of the will, the proceeds of contracts and sales are expressly reserved "for the benefit of the devisee thereof."

II. As to the third clause of the will, and the deed to John Hunter, jun. and the declaration of trust or of uses accompanying them, several of the same questions arise, and are referred to in the complaint. As to most of the same the plaintiff is not particularly interested therein, but submits them for the interpretation of the court. The following suggestions are made in regard to them. 1. Whether the provision in the declaration of trust, for the collection and investment of the rents and proceeds of sales for the benefit of John Hunter, jun. until he attains the age of 25 years, is an illegal accumulation within the provisions of the revised statutes on that subject. 2. What becomes in such case of said rents and proceeds. 3. Whether such illegal accumulation (if it be such) has the effect to avoid the *whole* trust, whether it vests the fee in John Hunter, jun. discharged of the trusts, or whether the property is to be disposed of in the

Hunter *v.* Hunter.

same manner as if said trust deed and declaration of trust had not been executed. 4. Whether the provision canceling the trust deed in case John Hunter, jun. dies before arriving at the age of 25 years without *leaving lawful issue*, and the provision directing that said lands, together with the securities on sales thereof should remain and belong to the plaintiff, (except in a certain contingency,) in case the said John Hunter, jun. should die before attaining the age aforesaid, *without having lawful issue*, and the provision directing it to belong to the *children* of John Hunter, jun. in equal proportions in case he shall *have lawful issue* and die before attaining the age of 25 years, are legal and valid provisions, or whether they are void as importing an *indefinite failure of issue ;* or how otherwise. 5. Whether the words *having lawful issue*, and the words *leaving lawful issue*, are synonymous, and what is their true meaning ; whether they mean having or leaving *children*, or *descendants*, or how otherwise ; and whether these clauses are satisfied by said John Hunter, jun. *having* a child lawfully *born* to him, or whether they require his child or children to be *living* at the time of his death. 6. Whether in case these provisions are *void*, the legal effect is to vest an absolute estate in fee in the said John Hunter, jun. discharged of these limitations, or whether the effect is to annul and destroy the trust deed entirely, or how otherwise. 7. Whether in the provision giving the property to Elias D. Hunter in the event of John Hunter, jun. dying without having or leaving lawful issue, the qualification annexed thereto, viz. "unless otherwise disposed of by the said John Hunter in and by his last will and testament," takes effect under the provisions of the will in question, and deprives the plaintiff of the benefit of the devise. That is, whether the third clause of the will which devises all the testator's other lands in Sullivan to John Hunter, jun. except those devised in the second clause to the plaintiff, and the 17th clause of the will which devises to John Hunter, jun. all the rest, residue and remainder of the testator's real estate, not in the said will otherwise disposed of, are dispositions of the property in question, within the meaning of the above recited clause in the trust deed, and defeat the limitation

over therein made to the plaintiff. We submit that they do not, and were not intended so to do; and that in order to deprive the plaintiff of the benefit of the trust deed in that particular, there must be an express, direct and specific disposition in the will of the very property embraced in the trust deed. 8. Whether the ratification and confirmation of the gift and deed to John Hunter, jun. in the third clause of the will, has any, (and if so what) effect upon the estate and interest granted and conveyed by said deed and declaration of trust; and whether they have the effect of vesting said estate and interest in the said John Hunter, jun. on the death of the testator, or only on his attaining the age of 25 years. 9. Whether on the death of John Hunter, jun. under 25, and without issue, the said property and estate will vest in his devisees or heirs at law, or under said deed and declaration of trust in the said plaintiff. We claim the latter to be the true construction. 10. Whether the provision in the codicil devising to the sisters of John Hunter, jun. the real estates devised to him in the will in the event of his dying without leaving any lawful children or descendants at the time of his death, has any, and if so, what effect upon the property in question; whether it can have any effect thereon if the provisions of the trust deed are valid, and if invalid, whether the property comes within the range and effect of the will, and what is the effect thereof. 11. Whether the provision in the codicil, just referred to, involves any illegal suspense of the power of alienation, and if so, what is the destination of the property in question.

III. As to the *fourth* clause of the will taken in connection with the first clause of the codicil, a question is submitted to the court under this clause, whether the disposition of the Bayard farm therein mentioned does or does not conflict with the statute against perpetuities, or illegally suspends the power of alienation. A life estate in this farm is given to the plaintiff by the will, and in a certain contingency John Hunter, jun. is to execute a deed in fee thereof to his three sisters, subject to the use or occupation thereof by his mother and three sisters, so long as they remain single and unmarried, which it is obvious may be during four lives.

IV. As to the *fifth* clause of the will, taken in connection with the deeds to and from Ludlow, several questions arise, as to the rights of the parties which are referred to in the complaint. We submit the following suggestions. 1. As to such portion of the lands embraced in this clause as were derived from James Desbrosses, deceased, they necessarily fall under the operation of the trust deeds already discussed. 2. The plaintiff, E. D. Hunter, must necessarily take said lands and the proceeds thereof, (so far as sold or disposed of) so far as the plaintiff's title under said trust deeds shall be confirmed by the decision of this court. The particular questions arising under the same have been discussed under the second clause of the will. 3. As to those portions of the lands embraced in the devise which confessedly belonged to John Hunter, in his lifetime, *in his own right,* and which have not been sold or leased, this devise will take full effect. 4. As to those portions which had been contracted to be sold, or were under lease, reserving rents, the same questions arise as are discussed under the second clause, and need not be here repeated. 5. A portion of the land embraced in the devise, lying in the county of Ulster, a question arises under this clause, whether it embraces those lands.

V. As to the 9th clause of the will, and the 11th clause of the will, a question arises, as to which is the primary fund for the payment of the legacies of $20,000 to each of the daughters—that is, whether they are primarily payable out of the testator's personal estate generally, or out of the particular fund bequeathed to John Hunter, jun. in the 9th clause of the will. (*See Hoes v. Van Hoesen,* 1 *Comst.* 120.)

VI. As to the 17th clause of the will and as to the 3d clause of the will in connection with the 2d clause of the codicil a question arises as to the nature and extent of the interest of John Hunter, jun. in the real estate therein devised. I. It is obvious that any limitation of John's title by the terms of the will cannot affect his title (whatever it may be) derived under the trust deeds and heretofore discussed. 2. The question as to the other lands will be seen to be this. (1.) Plaintiff takes a life estate under the second clause of the will. (2.) John Hunter, jun.

takes a fee simple by the 3d clause of the will in all lands in Sullivan except in Nos. 4 and 5, [otherwise disposed of] and except the land devised in the 2d clause to the plaintiff. (3.) John Hunter, jun. takes a fee simple by the 17th clause of the will, in the residue of the real estate not otherwise disposed of, in case he survives his father. (4.) In case he dies before his father, leaving lawful issue, or lineal descendants, then the same is devised to such issue or descendants, but if without leaving such issue or descendants, then the same is devised to the three sisters of John. (5.) By the 2d clause of the codicil, it is provided in regard to *all* real estate devised to John Hunter, jun. that in case he dies without leaving lawful children or descendants at his death, the same passes to his sisters in fee. Under this the question arises, Has he more than a life estate? Is the condition a valid one? Can he devise or convey this real estate? If he has lawful children or descendants does *he* take a fee, or do *they* take a fee?

VII. As to the 18th clause of the will, and the 21st clause of the will, taken in connection with the third clause of the codicil, a question arises which is referred to in the complaint, and will be necessary to be settled by the court. 1. Whether the proceeds of unperformed contracts for the sale of portions of the real estate of the testator not under lease are to be regarded as personal estate, and to pass to the legatees thereof, or are to belong to and be invested for the benefit of the devisees of the lands or of the rents, or other interests therein. 2. The same question arises as to contracts for the sale and extinguishment of the rents. 3. The same question arises as to the contracts for the sale of the reversionary or other interest of the testator in said real estate. The plaintiff therefore asks for a judgment or decree, settling the above, and any other questions which arise upon the instruments in question, and making the proper provisions for carrying out the same, and taking such accounts as may be necessary, and also awarding costs, expenses and counsel fees as shall be just.

*Wm. Boies,* for John Hunter, jun. and Elias D. Hunter, jun.

I. Under the trust deed from Gabriel V. Ludlow to John Hunter, John Hunter took a life estate. 1. The trust deed so provided. 2. Elias D. Hunter was not a party to the instrument, and cannot claim any estate under it, conflicting with that of John Hunter, who was a party. 3. John Hunter was entitled to a life estate in these lands as "tenant by the curtesy," and he has disposed of it in no way during his life.

II. In the second clause, the testator gives to Elias D. Hunter, his heirs and assigns forever, all his *land* in 41 of the Hardenburgh patent in Delaware county, and his *lot* 11 in the town of Mamakating, in Sullivan county. 1. As to those lands in great lots 41 and 11, under the leases reserving rent, the devise in fee to E. D. Hunter is inoperative and ineffectual; the interest of the testator therein not being lands. 2. As to those lands held under leases in fee, reserving rent, and under contract for the sale and extinguishment of the rents, the devise in fee of the land is inoperative. 3. As to those lands not under lease; but under contract of sale, where moneys are due and to become due, the devise in fee of the lands is inoperative. They fall into the personal estate. (2. *R. S. 4th ed.* 269. *Payn* v. *Beal,* 4 *Denio,* 410. *Herrington* v. *Budd,* 5 *Id.* 321. *Overbagh* v. *Patrie,* 8 *Barb.* 28. *Rose* v. *Bartlett, Cro. Car,* 292.)

III. In the third clause, the testator gives unconditionally to John Hunter, jun. all his lands in Sullivan county not embraced in great lots 4 and 5. He also ratifies and confirms a previous gift and deed of great lots 4 and 5 of the Hardenburgh patent unto John Hunter, jun. ; and gives his farm, known as the Bayard farm, with the buildings and appurtenances thereof, to John Hunter, jun. upon the condition that he shall not dispose of the same until he shall have attained the age of twenty-five years. 1. This clause has the effect to give John Hunter, jun. an immediate and vested interest in great lots Nos. 4 and 5. The testator, by this clause, ratifies and confirms his gift. It was before conditional, and now becomes absolute, and cannot be defeated by the happening of any event whatever. John Hunter, by this clause, conveys the devisable interest which remained

in himself, to John Hunter, jun. and the two estates merge and form an absolute estate in fee simple. If he should die before he arrives at the age of 25 years, the estate would vest in his devisees or heirs. 2. The accumulation of the rents and profits of these lands, as provided for by the trust deed, beyond the majority of John Hunter, jun. is void under the statute. (2 *R. S.* 4*th ed.* 135, §§ 37, 38.) 3. John Hunter, jun. enjoys the rents and profits as from and after his majority. The rents and profits which have accrued must be paid over to him at his majority, and those which may accrue must be immediately paid over to him. 4. John Hunter, jun. takes an absolute and unconditional estate in the Bayard farm, under this clause. The clause in the codicil with reference to this property, is void on the ground that it suspends the power of alienation for a longer period than two lives in being. The power of alienation may be suspended until John, jun. becomes 25 years of age, and also during the life of E. D. Hunter, 40 days in addition, and during the life of the mother, and so long as the three sisters remain unmarried. The fourth clause of the will, as respects this property, is void, for the same reason. The clause, " I give and devise unto my said grandson, his heirs and assigns, all my other lands in that county," (Sullivan,) has the effect to vest the fee simple immediately in John Hunter, jun.

IV. 1st. As to those lands in great lots 41 and 11, under leases in fee reserving rent, the devise in fee to E. D. Hunter is inoperative and ineffectual ; the interest of the testator therein not being lands. 2. As to those lands held under leases in fee reserving rent, and under contract for the sale and extinguishment of the rents, the devise in fee of the land is inoperative. 3. As to those lands not under lease, but under contract of sale, where moneys are due or to become due, the devise in fee of the land is inoperative. They fall into the personal estate. (2 *R. S.* 269, 4*th ed. Payn* v. *Beale,* 4 *Denio,* 410. *Harrington* v. *Budd,* 5 *Id.* 521. *Overbagh* v. *Patrie,* 8 *Barb.* 28.) 4. The latter part of the 5th clause, " and in case any of my said granddaughters should die without leaving lawful issue or lineal descendants, then the share of the one so dying shall be equal-

ly divided between the surviving sisters and the issue of such of them as may then be dead," is void, inasmuch as it suspends the power of alienation for more than two lives in being. It is general and intended to apply should the granddaughters die after the son. The language naturally conveys that meaning In the 6th, 7th and 8th clauses, where the testator desires to limit the effect of the provision to the case where his granddaughters die before the termination of the life estate of his son, he expressly says so. The power of alienation may be suspended by this clause, during the lives of the son and each of the three granddaughters. 5. The devise of all the testator's lands in great lot No. 25 in the Hardenburgh patent, lying in the county of Greene, " and all my other lands in the said county of Greene," does not cover the testator's lands in great lot No. 25, which do not lie in the county of Greene. It is clearly the intention of the testator, by this clause, to give his granddaughters all of his land in the county of Greene, and that only.

V. The 6th, 7th and 8th clauses are inoperative as to those houses and lots which John Hunter sold in his lifetime. The proceeds of such sales are personal estate. (2 *R. S.* 269, *4th ed. Payn* v. *Beal.* 4 *Denio,* 410. *Herrington* v. *Budd,* 5 *Id.* 321. *Overbagh* v. *Patrie,* 8 *Barb.* 28. *Rose* v. *Bartlett, Cro. Car.* 292.)

VI. The 9th and 11th clauses, taken in connection, have the effect, 1. To give to John Hunter, jun. all the testator's stock in the Westchester County Bank, and in the Tanners' Bank, Catskill, and all such bonds and mortgages, and other securities and moneys which were in the hands of James Powers, Esq. at the decease of testator, subject to, but not charged with the legacies to testator's granddaughters. 2. To charge the testator's personal estate with the payment of these legacies. The charge upon John Hunter's funds is only in *aid* and not in *exoneration* of the personal estate. (*Hoes* v. *Van Hoesen,* 1 *Comst.* 120. *Manning* v. *Spooner,* 3 *Ves. jun.* 114. 1 *Story's Eq. Jur.* 571–2, *and cases there cited.*) The 9th clause has the effect to deliver and give title to John Hunter, jun. of the assignment of bonds and other securities, which were executed by the testator to

John Hunter, jun. but placed in the hands of Mr. Powers, without delivery.

VII. As to those lands purchased at tax sales, obtained from Robert R. Hunter, or the assignees of John Kiersted, which are under leases in fee, reserving rent, or under leases in fee reserving rent, and under contract for the sale or extinguishment of the rents, or under contract of sale where moneys are due or to become due, the 10th clause is inoperative, inasmuch as the testator's interest is personal estate. (2 *R. S.* 269, 4*th ed. Payn* v. *Beal*, 4 *Denio*, 410. *Herrington* v. *Budd*, 5 *Id.* 321. *Overbagh* v. *Patrie*, 8 *Barb.* 28. *Rose* v. *Bartlett*, *Cro. Car.* 293.)

VIII. The 21st clause does not alter or affect the destination which this property would take under the previous provisions of the will. The clause, "and the proceeds of such contracts and sales shall be invested by my executors, or whoever shall execute my will, on bond and mortgage, for the benefit of the devisees *thereof* under this my will, in the same manner as other investments are hereinbefore directed to be made," does not give the benefit of these sales, contracts, &c. &c. to the devisees of the land. The executors shall make the investment for the benefit of the devisees *thereof;* that is, for the benefit of the devisees of the testator's personal estate. The term *devisee* is applied to the recipient of personal property as well as real estate under a will. (*Blackstone; Bouvier; Webster.*)

IX. The trust deed has the effect, taken in connection with the third clause of the will, to give to John Hunter, jun. not only the lands in great lots Nos. 4 and 5, but the moneys which are due or may become due from leases, contracts of sale, &c. of lands in said lots

X. 1. The sales, contracts and leases by John Hunter of lands conveyed by the trust deed from Ludlow, constitute a revocation, change and alteration of the trusts of said deed under its provisions, at least as to those lands under contract, &c. 2. The will of John Hunter constitutes a revocation, change and alteration of the trusts of said deed.

XI. The clause "in case the said John Hunter, (my grandson,) shall die without leaving any lawful children or descend-

ants, at the time of his death, I give, devise and bequeath all and every part and portion of my real estate to my said grand-daughters," &c. has not the effect to limit or lessen John, jun.'s estate. It does not convert it into a life estate, 1. Because the testator evidently did not intend so to do. 2. Because it would provide for an illegal suspension of the power of alienation. 3. Because it would affect rights already acquired under deed F. (*Tator* v. *Tator*, 4 *Barb.* 431.) 4. Because it is limited on lives *not in being*. 5. Whether the girls take any estate under this clause, depends upon whether the children of J. Hunter, jun. *die* before him, and children, too, *not in being* at the time of the making of the will. The defendant, E. D. Hunter, jun. was not in esse at the death of the testator. 6. The law abhors *all* suspension of the powers of alienation, and tolerates it only in certain *excepted cases*, where a prescribed *manner* is followed and a *limited time* is not exceeded. 7. The fair con-struction of this clause, is as though it read, "in case the said John Hunter, (my grandson,) shall die (*before me*) or (*before the testator*,)" &c. &c. This clause is inoperative inasmuch as the said John, jun. survives the testator. (*Jarman on Wills*, vol. 2, ch. 48, p. 659. *Hinckley* v. *Simmons*, 4 *Ves.* 160. *King* v. *Taylor*, 5 *Id.* 806. *Trotter* v. *Williams*, *Pre. Ch.* 78.) 8. But should we err in the positions we have taken, then John Hunter, jun. takes an estate tail, and by virtue of the statute of 1786, abolishing entails, he is seised, of the real estate devised, in fee simple absolute. (2 *R. S.* 4th ed. p. 132. *Lott* v. *Wyckoff*, 1 *Barb. S. C. Rep.* 565. *S. C.* 2 *Coms.* 555. *Emmons* v. *Cairns*, 3 *Barb.* 245.)

XII. If we are wrong in the position taken above, then the devises to the testator's granddaughters, in the 5th, 6th, 7th, and 8th clauses of the will, are affected by a similar clause; especially the devise in the 5th clause.

XIII. The clause, "But should the said John Hunter, jun. marry with the consent of his parents, before attaining the age of twenty-five years, and *have* lawful issue, and shall die before attaining that age, then the said lands embraced in the

said deed of conveyance, or such part thereof as shall remain unsold, together with such as shall be under leases or contracts of sale, (subject to such leases and contracts,) and all rents, moneys and securities, to be held and taken as hereinbefore mentioned, for the benefit of the said John Hunter, jun. shall go to and belong to the children of the said John Hunter, jun. in equal proportions," has the effect; 1. In case John, jun. dies before attaining the age of 25 years, to give lots 4 and 5 to defendant, E. D. Hunter, jun. and any other children John, jun. may have previous to his decease. 2. To vest in John Hunter, jun. and his children an absolute estate in great lots 4 and 5. 3. To entitle John Hunter, jun. and his children to the rents and profits of said lands. 4. Immediately upon John Hunter's *having* a child, the gift became complete and was relieved from all contingency. The contingent rights of John Hunter, sen. and Elias D. Hunter were defeated by the birth of a lawful child to John Hunter, jun.

XIV. We submit, that by the fifteenth clause of the will, a trust is created and an illegal suspension of the power of alienation provided for. This trust is to continue until the testator's grandchildren are *liberally* educated, which may be for more than two lives in being. The income of the estate is charged with the expenses, &c. This clause has an important bearing upon other parts of the will; and especially upon fol. 84 of the codicil.

*Wm. A. Porter*, for Elizabeth D., Ann M. and Adele Hunter. I. As to the trust deed. This deed embraces all the real estate which descended to Elizabeth, (the wife of the testator,) as one of the heirs of James Desbrosses. 1. By the terms of this deed, the fee simple does not vest in Elias D. Hunter, upon his attaining the age of 21 years, *unless* both John Hunter and his wife, have died prior to that time. 2. The trust continues for the benefit of John Hunter and his wife and the survivor, at all events until the death of both of them, and *upon the death of both of them*, for the benefit of Elias D. Hunter, until he attains the age of 21 years. 3. These deaths must take

place, and Elias D. Hunter must also attain the age of 21 years before the trusts cease, then they cease : and Elias D. Hunter stands seised in fee.

II. We claim that the trusts created by the said deed were revoked by the will, and that the property embraced in the deed is disposed of by the will. The deed gives to John Hunter the right to revoke. 1. The *intention* of John Hunter to revoke the trusts, is manifest; for he undertakes not only to put an end to the trusts but to dispose of the property. 2. This intention he manifests in writing executed by himself, (he having survived his wife.) 3. It is not necessary that a revocation should be express as to the intention to revoke. Acts implying such intention are sufficient, as in cases of wills, agencies, &c. (*Bouvier's Law Dic. vol.* 2, *p.* 467, *&c.*) 4. Every thing necessary to constitute a revocation, has been done. The intention to revoke has been manifested in writing, and as clearly as though it had been stated in so many words. A will disposing of the property in a manner at variance with the trusts, has been made and executed by John Hunter. 5. The effect of such revocation is, that the property passes ⸢under the disposition of it made in the will.

III. The trusts in the deed, having been revoked, as to the 2d clause of the will, rents reserved under leases in fee, do not pass under the devise of *lands.* Nor do contracts for the sale or extinguishment of rents. Nor do contracts for the sale of lands. Nor do rents which accrued during the life of the testator. (2 *R. S.* 268, § 5. *Payn* v. *Beal,* 4 *Denio,* 405. *Herrington* v. *Budd,* 4 *Denio,* 321.) The rents reserved under leases in fee, fall into the residuum of real estate, disposed of by the 17th clause of the will; and the contracts above mentioned, and the rents due at the testator's decease, fall into the residuum of the personal estate disposed of by the 18th clause of the will.

IV. As to the 3d clause of the will, with the 2d clause of the codicil and the deed from John Hunter and E. D. Hunter and wife to John Hunter, jun. and the declaration of trust accompanying it. These deeds we claim are void, and that the

will disposes of the property embraced therein, the trusts in the deed to John Hunter, having been revoked. 1. The declaration of trust provides that in case John Hunter, jun. should die before he attains the age of 25 years, without *leaving* lawful issue, then the deed of conveyance to John Hunter shall be canceled and destroyed, *so as to be of no effect.* It also provides that in such case the land conveyed by the said deed shall belong to Elias D. Hunter, *unless otherwise disposed of by John Hunter in his will.* It also provides that should John Hunter, jun. marry with the consent of his parents, before attaining 25 years of age, and *have* lawful issue and die before attaining that age, it shall go to his children. 2. All the testator's lands in Sullivan county, including lots 4 and 5, except those devised in the 2d clause of the will to his son, are disposed of in the 3d clause of the will to John Hunter, jun. and upon his death without leaving lawful issue, by the 2d clause of the codicil, to his three sisters. 3. There is provision for an illegal accumulation of rents, &c. (2 *R. S.* 135, § 37.) If this provision is valid for the minority of John Hunter, jun. it is void after that time, and the will disposes of the residue.

V. As to the 4th clause of the will in connection with the 1st clause of the codicil: There is nothing in the disposition of the Bayard farm by these clauses conflicting with the statute against suspending the power of alienation. 1. The power of alienation is suspended only during the life of Elias D. Hunter. 2. If conveyed by John Hunter, jun. to his three sisters in fee, subject to the use and occupation as provided in the codicil, they, with their mother, may convey an absolute fee in possession. (2 *R. S.* 133, § 14. 3 *Barb. S. C. R.* 245.) The devise in the 4th clause of the will, in connection with the 2d clause of the codicil, of Hunter's Island, Hart Island, and the Provoost farm, does not conflict with the statute. Elias D. Hunter has a life estate. After his death the devise is to John Hunter, jun. and he takes a qualified fee, liable to be defeated upon his death without leaving any lawful children or descendants. (2 *R. S.* 134, § 25.)

VI. As to the 5th clause of the will: All of the testator's

lands in great lot 25, in the Hardenburgh patent, are included in this devise. The words " lying in the county of Greene," are merely used for designation or description of the lot, 5-6 of which lie in Greene connty. 1. The wording " *all* my lands in great lot 25," indicate the intention to convey the entire lot, and not *that portion* lying in Greene county. 2. If the intention was to restrict the devise to lands in Greene county, the words " lying in the county of Greene," would more naturally and properly have immediately followed the word " lands." 3. If such was the intention, no reference to the lot or the patent was necessary or natural. The words " all my lands in the county of Greene," would have embraced all the lands in lot 25, and the *other lands* devised, and this would have been by far the simpler and more natural wording. (*Doe* v. *Roe*, 1 *Wend.* 541.) 4. The phrase " all my other lands in said county of Greene," is used to designate the portion of his lands in said connty, which the devisees shall not take until after the death of his son. As to great lot 25, in the Hardenburgh patent, we claim that under this clause the devisees therein named take immediately. As to the other lands in Greene county and the Sackett farm, from and after the death of Elias D. Hunter, there can be no illegal suspense of the power of alienation under the last paragraph, of this clause in the will. The share given by the devise to each one of the granddaughters respectively, is all that passes to the survivors at the death of any one of them. If any one of the granddaughters dies, *her share* goes to the survivors, and is alienable immediately. (*Vedder* v. *Evertson,* 3 *Paige,* 281.)

VII. As to the 9th clause of the will: The bequest in this clause, is the primary fund for the payment of the legacies given in the 11th clause, and also the costs and charges mentioned in the 9th clause. 1. It would be the primary fund for the payment of the *costs and charges against the same* without any direction to that effect, and we must suppose that the intention of the testator was, that it should be so, in directing that it should be *subject* to such costs and charges. 2. The same direction is made respecting the legacies, and we must suppose that the intention was the same as to them. This construction

is consistent with the provision in the 11th clause, that the legacies shall be paid out of the personal estate. (*Kelsey* v. *Deyoe*, 3 *Cowen*, 133. *Burton* v. *Knowlton*, 3 *Ves.* 117. *Hancox* v. *Albey*, 11 *Id.* 179.)

VIII. As to the 13th clause of the will, and the 2d clause of the codicil: After the death or marriage of Mary Mills, and the death of John Hunter, jun. without leaving lawful children or descendants surviving him, Elizabeth D., Ann M. and Adele Hunter take the fee.

*By the Court,* S. B. STRONG, J. As all persons now in being who can have any interest, according to the statements in the pleadings and the proofs in this action, either in the property to which the testator was at any time entitled in his own right, or that which descended to his wife from her father, are before this court as parties, (except Mary Mills, concerning whose estate or rights under the will no question exists,)—as the questions which have been raised upon the will necessarily involve to a considerable extent a consideration of the tenor and effect of the deeds—as the plaintiff calls for, and the defendant consents to, a judicial construction of all those documents—and as the assent of the parties has reference only to the mode of procedure in matters over which the court has the requisite jurisdiction—I shall consider the deeds, so far as it may be necessary in order to determine what was the extent of the testator's property and power at the time of his decease, and what passed by his will.

The deed from the testator and his wife to Ludlow, conveyed all her share, right and proportion, of all the real estate in the state of New-York, whereof her father, James Desbrosses, died seised, and to which she was entitled as one of the heirs at law of her father, together with the appurtenances, and the rents, issues and profits thereof. The description of the principal subject matter conveyed was sufficiently broad to comprehend rents reserved upon perpetual leases, even if rents had not been, as they were, particularly designated. Such rents are, according to Blackstone, (2 *Com.* 41,) incorporeal hereditaments. As such they are descendible from those to whom they are reserved.

(1 *Just.* 12 *b.* *Watkins on Descents*, 290. *Prest. on Abst.* 54.) The case of *Payne* v. *Beale*, (4 *Denio*, 405,) which was cited on the argument by the counsel for the defendants, merely decided that a landlord having a mere right of forfeiture, by a re-entry for non-payment of rent, has no interest or estate in the *lands* which can be sold *on execution.* Judge Jewett, who delivered the opinion of the court, admitted that in a strict legal sense the terms "lands, tenements and real estate," or one of them, may comprehend every thing of a permanent nature that may be holden, and may thus embrace rents, (under perpetual leases.) The word seised, does not confine the description to tangible property. "Seisin," as was very properly decided in *Van Rensselaer* v. *Poucher*, (5 *Denio*, 35,) has reference to the estate, and not to the thing in which the estate exists.

The deed from Ludlow conveyed the same property to the testator. It was to be held by him in trust to and for the use of the testator and his wife during their natural lives, and for the use of the survivor during his or her life. There were contingencies upon which the entire estate was to vest in the testator, but as they never happened, it is unnecessary to mention them here. Upon the death of the survivor of the two, the property was to be held in trust for the use of the plaintiff, if he should then be a minor, until he should attain the age of twenty-one years; or if he should then be of full age, or when he should attain that age, it was to vest in him absolutely. It was contended by his counsel that by the terms of the deed the absolute title was to vest in the plaintiff whenever he should attain his majority, although it might be in the lifetime of but one of his parents. I do not so understand that deed. The grant for the use of, or to, the son, is expressly "upon the death of both his parents." That too, was manifestly in accordance with their design. They did not intend to deprive themselves, under any contingency, of the full enjoyment of the property, nor of the exercise of the powers which they reserved over it. There is some singularity in this part of the deed. The property is not to be held in trust, and some one is to stand seised of it after the death of the trustee, without the designation of

any substitute. If the clause, that, "when the son should attain the age of twenty-one years, then the trustee should stand seised of all the estate, to and for the sole use, benefit and behoof of such son, his heirs and assigns, in fee simple forever, without any further trust of, and concerning the same," should be construed by itself, there would be no question but that the plaintiff became seised of the absolute legal estate in the premises when he attained his majority, although his father was then alive and lived many years afterwards. But the rule is, very properly, that in construing an instrument in which there are apparent discrepancies, the whole must be taken together, in order that, if possible, the inconsistencies may be reconciled. Certainly there would be discrepancies in the insulated provisions that the property was to be held for the entire use of the father and mother, and the survivor during the life of the survivor; that the son was to become seised of it in fee simple on his attaining the age of twenty-one years, although his parents, or one of them, might then be living; and the further provision, that if the son should die during the natural lives of his parents, the property should go to the father, subject to the *right* of the mother *during her life,* in fee simple. These difficulties are reconciled by construing the deed as providing that the property should be held for the use of the parents and the survivor, during life, and that upon the death of the survivor *and* the full age of the son, it should vest in him absolutely; and such, in my opinion, is the true construction.

The trust estate, and consequent suspension of the power of alienation, might have continued beyond the lives of the testator and his wife, had both died during the minority of the son, but as they could not have extended beyond the death of the son, that would not have exceeded the time allowed by law when the deed was executed.

The testator was authorized to sell with the consent of his wife, all or any part of the lands belonging to the Desbrosses estate situate in the city of New-York, and to receive and retain the proceeds to and for his own use. That power was exercised

only as to one lot, and no question has been raised as to that, or its avails.

Authority was also conferred upon the testator, his heirs and assigns, or the *guardian* of such of his heirs as might be minors, to make sales or leases of all or any part of the estate included in the deed from Ludlow; but it was expressly provided that the *considerations*, rents, issues and profits of what might be sold, should be subject to the trusts specified in that conveyance. Under this power the testator sold a portion of the lands, and received a part of the consideration money, and a part remains unpaid. He also leased another portion of such lands in perpetuity, and received a part of the rents accruing during his life, and a part thereof is still due. He also entered into contracts for the sale of another portion of these lands, (but executed no conveyance therefor,) and received a part of the consideration money, and a part remains unpaid. And he made contracts for the extinguishment of the rents of a portion of the lands held under perpetual leases from Desbrosses, and has received a part of the consideration money for such proposed extinguishment, and the residue remains unpaid.

In all those cases where the contracts were not consummated by conveyances the legal title to the property has not been divested, and is now in the plaintiff. Consequently the requisite conveyances should be executed by him. The provision in the revised statutes authorizing a court of equity to compel the specific performance of a contract, (for the sale of real estate,) made by any one who may have died before it was consummated, by his minor heir, is based upon the supposition that in such cases the heir has the legal title. The power conferred by the testator upon his executors, in the 21st clause of the will, to carry into effect his unperformed contracts, is confined in terms to *his own* real estate; and the subsequent direction that the proceeds should be invested for the benefit of the devisees of the lands contracted to be sold, evinces an intent that the power should be limited to the sales of land which he could devise.

The power of revocation reserved to the testator and his wife during their lives, and to him alone if he survived her, was

limited to " the *trusts* contained in the deed." Those trusts applied to the testator and his wife, and the survivor, during their lives, and to the plaintiff during his minority, and until he became seised of the absolute title.   On the death of both parents, and the termination of such minority, the plaintiff was to stand seised of all the estate to and for the sole use of himself, his heirs and assigns, in fee simple forever, *without any further trust of and concerning the same.*   That is clearly a legal estate, and is exempt from the power of revocation, under the strict construction to which reservations in a deed are subject, and indeed under any rational construction.   There can be no doubt but that this intepretation corresponds with the intention of at least the principal grantor of the deed to Ludlow. She could not have designed to put it in the power of her husband to divert all her patrimonial property from her son, and possibly in favor of his children by a second wife.

It is manifest from the whole scope of the deed, that it was not the intention that a sale of any portion of the lands should be considered as an absolute revocation *pro tanto.*   The consideration money was to be substituted for the land, and subject to the same trusts.   Its ultimate destination was to be the same.   When it was designed to confer the power upon the testator to divert the purchase money from the general uses specified in the deed, as to the land, and to vest the title to it absolutely in himself, it was given in explicit terms.   Thus he was expressly authorized " to take, have, and retain the proceeds of such lands situate in the city and county of New-York as he might sell, to the use of himself, his executors, administrators and assigns, without any account of and concerning the same."

The testator was undoubtedly entitled during life to the rents, issues and profits of the unsold lands, and to the interest accruing on the consideration moneys of such portions of the real estate as he had sold, or contracted to sell.   Upon his death the plaintiff became seised in fee of the unsold lands, and the rents on the then existing and unaffected leases, and entitled to the absolute property in the consideration moneys for that portion of the estate which had been sold, whether it had been paid to

the testator, or remained unpaid at the time of his decease. What I have said as to the interests of the testator and of the plaintiff in the Desbrosses estate, or the avails thereof, has no reference to any interest in that portion of such estate which was included and conveyed in and by the deed to the defendant, John Hunter, junior, after the execution of that deed.

The premises described in the conveyance to John Hunter, junior, consisted partly of lands held by the testator in his own right, but principally of lands which had descended to the testator's wife from her father, and were included in the deeds to and from Ludlow. No question was made, on the argument, and therefore none will now be considered, as to the power and right of the testator, and the plaintiff and his wife, to convey the absolute title to that portion of those premises which had belonged to the Desbrosses estate.

The deed to John Hunter, jun. was confided to the custody of Mr. Powers, and was not to be delivered to the proposed grantee until he should obtain the age of 25 years. If he should die under that age, having married with the consent of his parents, and having lawful issue at the time of his death, (as I interpret the declaration of trusts and objects executed at the same time with the deed,) the title to the premises was to vest in, and of course the deed was to be delivered immediately to, or for the benefit of, such issue. I conclude that the term *having* lawful issue applies to the time when the grantee might die under the appointed age, as that construction harmonizes with the previous declarations, twice made, that if he should die under such age without *leaving* lawful issue, the deed should be destroyed and the property go elsewhere. Whatever doubts may have formerly existed relative to the true construction of the words, " dying without leaving lawful issue," our revised statutes, which were in force at the time when the deed which I am now considering was executed, have provided that as to any ulterior disposition of property by way of remainder, the failure in such cases is at the time of the death of the ancestor. The use of the terms does not, therefore, create an estate tail by implication in John Hunter,

jun. during his minority, to be forfeited, in the event of his death under 25, at the time when he would, if living, have attained that age; nor are the ulterior estates made dependent upon a contingency too remote to take effect. The suspension of the power of alienation is limited to the single life of John Hunter, jun. It was contended by the plaintiff's counsel that the deed to John Hunter, jun. must be inoperative and void, as one of the grantors had died before the time specified for its delivery to the grantee. I shall not consider whether the objection, if tenable at all, would be applicable to the whole property, or only to that portion of it which the testator held at the time in his own right, as I am clear that it cannot be sustained. The rule is well settled that when a deed is at first delivered to a third person as an escrow, such delivery is good and valid, and vests the title on the performance of the condition, or happening of the specified contingency, and therefore if either of the parties dies before the condition is performed, and the condition is afterwards perfected, the deed avails; for as there was *traditio inchoata* in the lifetime of the parties, and *postea consummatio existens* by the performance of the condition, it takes effect by the first delivery. (*Shep. Touch.* 59.) There is primarily a quasi creation of an estate, subject to be defeated by the failure to perform the stipulated condition. If there should be any thing in the condition requiring action on the part of the grantor or grantee, which he alone could perform, the death of the required actor without performance, would, of course, put an end to the inchoate estate. But clearly, that was not the case here. The title in this case is yet alive, and may be perfected by the delivery expressly prescribed or impliedly authorized by the written declaration accompanying the deed.

The declaratory instrument evinces the intention of the grantors, that the premises, or their avails, should be held and managed during the period intervening beteween the primary and eventual delivery of the papers for the benefit of the grantee or his heirs, should either become entitled to the property. Possibly such might have been the effect of the transaction, without any written stipulation, as an escrow takes effect,

if at all, from the first delivery. (*Ruggles* v. *Lawson*, 13 *John.* 285. *Wheelwright* v. *Wheelwright*, 2 *Mass. Rep.* 447. *Hatch* v. *Hatch*, 9 *Id.* 307.)  Although it is expressly declared in the explanatory instrument accompanying the deed, that those papers were to be placed in the hands of Mr. Powers as an escrow, yet there are some provisions for intermediate action. Such are the reservations or creations of power to manage, lease or sell the lands, to collect the rents and moneys which might be due on the contracts of sale, and to invest the moneys which might be received for the benefit of John Hunter, jun. provided he should eventually be entitled to the property.  These, to give them any effect, must be deemed declarations of trust, which it was competent for the grantors, under the circumstances, to make, and as Mr. Powers might be considered as the trustee of the grantee, to receive and hold the deed provisionally, for him, they became and continued effective.  The will recites that the testator had given to his grandson the premises described in the deed, in fee simple, and purports to ratify and confirm forever the deed and gift to him.  The recital is correct as to the extent of the estate when it should vest, and taken in connection with the deed, can mean nothing more.  The devise was, as it purported to be, simply a ratification and confirmation of what had been done, and was probably designed to save any question that might result from the management and disposition of the property by the testator, subsequent to his execution of the deed. The power reserved or given to the testator, by that deed, extended no further.  It was by implication merely, and could be exercised only upon the contingency of the death of John Hunter, jun. before attaining the age of. twenty-five years, without having lawful issue.  That certainly would not sanction any devise to the living John Hunter, jun.  Possibly the testator might, notwithstanding the deed, have given to the grandson the income which should accrue from the lands previously held by him, the devisor, in his own right, between the devisee's ages of 21 and 25 years, but that was not done, and as to the Desbrosses portion of the deeded lands, or any avails thereof, he had no power of disposition whatever, except what he derived

from the deed.    Besides ; the rents, issues and profits of the real estate, and the income which might be obtained from what should be sold or in any manner received under the deed, were to be held by the testator as a provisional trustee, and were not affected by any bequest of *his* personal estate.    In the event of the failure of the deed to take effect in favor of the proposed grantee or his issue, that part of the premises which belonged to the Desbrosses estate will revert to, or remain in, the plaintiff, under the Ludlow deeds, and he will be entitled to the residue, as it did not pass under a will not purporting to dispose of it specifically, as the heir at law of the testator.    He has, therefore, all the title to the whole of the property which that deed purports to convey, subject to the eventual estate of John Hunter, jun. or his issue.    The plaintiff will be entitled to the rents and profits of the real estate, and the income of the personal estate which shall accrue between the times when John Hunter, jun. shall attain the age of twenty-one years, and when he or his issue shall become entitled to the deed, and the title in him or them be perfected, as the direction for the accumulation of such rents, profits and income, for the benefit of John Hunter, jun. after the termination of his minority, is in contravention of the revised statutes.    (1 *R. S.* 726, §§ 37, 38.    *Id.* 773, 774, §§ 3, 4.)    The intended grantee, while the deed to him was held as an escrow, had no expectant *estate* which gave him a right to the intermediate rents and profits, under the 40th section of the title relative to the creation and division of estates.    There can be no valid existing limitation of an estate, under an escrow, until it has become effective by the eventual delivery.

Upon the whole, I am satisfied that the will neither passed nor in any way affected the title to the premises described in the deeds to and from Mr. Ludlow, or in the deeds and accompanying explanatory instruments, to John Hunter, jun. ; or to the proceeds, avails, rents, issues, profits, or income thereof, (except, of course, the rents, issues, profits and income of the property, or its avails, conveyed by the Ludlow deeds, which accrued previous to the testator's decease.)    An account must be taken of what was received by the testator on account of the property

Hunter *v.* Hunter.

included in the Ludlow deeds, beyond the accruing income, and also of so much of the accruing income as remained unpaid at the testator's death ; and it must be declared that the principal moneys' which may have been received by the testator, or which may have remained unpaid at his death, belong to the plaintiff; and that such unpaid part of the income was the property of the testator, and passed under his will as a portion of his personal estate. An account must also be taken of all the testator's receipts, on account of the property proposed to be conveyed by the deed, to John Hunter, junior ; and the amount must be paid to, or retained by, the plaintiff, subject to the eventual disposition prescribed in that deed and the accompanying instrument. This disposes, (so far as my decision can go,) of many of the questions raised by the pleadings and discussed on the argument, relative to the validity and effect of various provisions in the will.

The devise to the testator's granddaughters of all his lands in great lot No. 25, in the Hardenburgh patent, lying in the county of Greene, from and after the death of his son, can operate only upon the portions of that lot held by him in his own right, for reasons which have been already stated by me. That devise, too, includes only the testator's part of the lot which was situated in the county of Greene. The words, "lying in the county of Greene," could not have been designed as descriptive of the last preceding antecedent, the Hardenburgh patent, nor of the lot, as neither lies wholly in that county ; but must have referred to the lands intended to be devised. It may apply to them without any contradiction or discrepancy ; as words of restriction after a general designation, are not productive of inconsistency. So too, the general rule that the reference must be to the first antecedent, is inapplicable to a description consisting of several particulars. In that case each qualifies the primary and principal designation, and neither can be rejected, unless it is contradictory, and then only the less important. In this case, the description, taken together, calls for the following qualifications of the lands devised. They must be the testator's ; must be in lot No. 25 of the Hardenburgh patent ; and must lie in the

county of Greene. As there were lands to which each of those particulars applied, none others were included. So, too, I am satisfied that the words, " from and after the death of my said son," which followed both of the devises to which I have last alluded, and the intervening devise to the granddaughters, of the testator's other lands in the county of Greene, is applicable to each. That is evident from the punctuation, and results from the well established rule that a general clause following several particulars, with which it is connected by the same punctuation, qualifies the whole. The rule may not be universally applicable, but it is generally so, and there is nothing in this case calling for a departure. On the contrary, it corresponds with the intent of the testator to confer upon the plaintiff a life estate in the bulk of his property.

In devising his property situated in the county of Greene, the testator uses the words, " all my lands," without any other denomination of the subject matter, and it was made a question on the argument whether those terms, used in that clause and elsewhere, and standing alone, included rents under perpetual leases. I have already said that the right to those rents was real estate, and passed under a devise of such estate, referring to the locality of the land. But whether a devise in general terms, of the testator's lands in a county, passes his right to rents under perpetual leases on lands in such county, is a much more difficult question. A question somewhat, although not entirely, analogous, was discussed but not decided in the case of *Huntington* v. *Forkson*, before the court for the correction of errors, (6 *Hill,* 149.) It was also raised in the late supreme court, in the cases of *The People* v. *Haskins*, (17 *Wend.* 463,) and *Payne* v. *Beal*, (4 *Denio*, 405.) The question in the two cases in the supreme court was whether the landlord's right could be sold under an execution against real estate. In the case in Wendell it was decided that it could be; in the case in Hill it was decided the other way. In a case lately before the court of appeals it was decided that the lessee had a determinable fee, and the lessor had, in addition to his right to receive his rent, a mere right of forfeiture. When there is a determinable fee

Hunter *v.* Hunter.

in one, there can be no *existing* estate in the same land in another. The future estate is merely by way of substitution, and cannot arise until the determination of the primary fee. If this had been a new question I should have had considerable difficulty in coming to a conclusion that there could be a present fee in one, (which supposes the absence of any existing estate in another,) and at the same time, a right to receive and enforce the payment of rent out of the land, and an accompanying right of forfeiture which may be enforced at any moment, in another. However, it seems to be settled in this state, that the landlord has no present estate in the land; that his right is not even sufficient to support a surrender to him from the tenant. That may well be, and yet the right may pass under a grant or devise of the land. The rule of construction, as to the description of the thing granted or devised, is liberal. Thus the same word may be applied differently, according to the understanding in that part of the country where it is used. Lord Coke gives many instances of the kind, and the supreme court of this state has decided that the word timber may include fencing stuff, if that corresponds with the local interpretation. The title to the soil ordinarily passes under the general denomination of land. The reason for this—that it is incidental to the reversion—is not strictly applicable to leases in perpetuity; still the fact that there is a right of forfeiture may justify, if it does not call for, a similar interpretation. The propriety of this construction is supported by its conformity to the general understanding in the parts of the state where such leases prevail. Formerly the right of forfeiture dependent upon the breach of a condition could neither be granted nor devised, but passed by descent to the heir of the original grantor. But by our present statute of wills, a possibility in real property which may descend to the heirs, may be devised. ( 2 *R. S.* 57, § 2.) My impression is strong that the interest of the landlord, under the leases in question, passed under the devise of the land, and I must so decide.

In the instances where the testator had entered into contracts for the sale of lands held by him in his own right, the portions

of the purchase money which were actually received by him be-came a part of his personal estate, and passed as such under his will; but the unpaid portion must go to the devisees of the respective lands. This disposition of the unpaid purchase moneys is clearly made in the 21st clause of the will. The word " thereof" following the denominative " devisees" clearly desig-nates the special, rather than the general, devisees. The codicil empowers the executors to insert in the conveyances to be made by them, the necessary covenants and conditions to carry out and effectuate such contracts, and to bind the testator's estate and assets for their performance and fulfilment, so far as it may be lawful and proper for them to do so in their character as exec-utors, and without unnecessary personal liability. It appears to me that this power of " binding the estate and assets" is limited to the consideration, whether in money or securities, which the executors may receive under the respective contracts, each severally and for itself; and that to execute the power they are authorized to demand the requisite security to the pur-chasers, for the performance of the contract stipulations from the respective devisees of the lands contracted to be sold. To extend the power any further would be manifestly improper, as it might cause serious and possibly lasting embarrassments. When the devisees are minors the securities should be executed by their guardians, who can exact the proper change of securi-tics from their wards, when they shall arrive at full age. Such securities will be amply sufficient, and all that the purchasers can reasonably require. Indeed, they could be compelled to ac-cept them, if their sufficiency should be satisfactorily established, in order, if that should be necessary, to relieve the residue of the estate.

In the bequest of twenty thousand dollars to each of the granddaughters, there is a positive direction that their legacies shall be paid out of the personal estate. That, taken by itself, would make them payable out of that part of such estate which was not specifically bequeathed. In the previous specific be-quest of certain funds in the hands of Mr. Powers, to the grandson, it is declared that they are subject to the pay-

ment of the legacies to the granddaughters. That neither directs nor implies that those legacies shall be paid out of such funds primarily, but that a resort may be had to them if it shall become necessary; in other words, that if either shall fail it shall be the specific legacy, contrary to what would have been the result if it had not thus been qualified. Those funds may be applied towards the payment of the legacies to the grand-daughters, in aid of that portion of the estate liable therefor, according to the usual rule, but not otherwise. Had they been made first liable, as their value is much less than the amount of the legacies to the granddaughters (according to the admission of all the parties,) the specific legacy must inevitably have been wholly nugatory. In determining what is given, where the words are susceptible of variant explanations, a resort may be had to surrounding circumstances.

Should John Hunter, jun. attain the age of twenty-five years he will, as I have already intimated, take lots 4 and 5 in that part of the Hardenburgh patent lying in the county of Sullivan, under the deed, and not at all under the will, and consequently there will be no remainder in those lots, to pass to the granddaughters, under the codicil.

The devise over of the share of the Sackett farm of either granddaughter who may die in the lifetime of her father, to her lawful issue if she shall leave any, must necessarily take effect, if at all, immediately upon the termination of the life estate of the father. The devise to the survivor or survivors or the issue of any who may have previously died, is not confined in terms to a death within the lifetime of the father. But as the two clauses are connected by the copulative conjunction "and," both relate to the same property, and provide for consistent alternatives, there can be no doubt that the testator contemplated in each the same period. Neither, therefore, suspended the power of alienation beyond the life of one person.

The restriction of the right to sell the Bayard farm until John Hunter, jun. should attain the age of twenty-five years, was upon him personally, and could not extend beyond his life.

But if it could, and was therefore invalid, the avoidance of a condition subsequent would not defeat the estate.

There is nothing in the devise of the Bayard farm, or of Hunter's Island, Hart Island and the Provoost farm, which can suspend the absolute power of alienation as to either for more than two lives in being at the death of the testator. A life estate is devised to the plaintiff; and the disposition of those lands, upon his death, will depend upon the election, or omission to elect, of John Hunter, jun. within the next forty days. Neither the right, nor prescribed omission, to elect, can extend beyond the life of the person upon whom the power is devolved. The suspension of the power of alienation must therefore be at an end before or at the time of his death, should that happen within the forty days.

Neither the requisition in the will that John Hunter, jun. should, on electing to move to Hunter's Island upon the death of his father, lease to his mother and three sisters the Bayard farm, for their residence, free of rent so long as they should remain single, nor the direction in the codicil that on making such election he should execute a deed for the Bayard farm to his three sisters, subject to the use and occupation thereof by them and their mother and the survivors and survivor of them so long as they should remain unmarried, would effect a suspension of the power of alienation at all, within the meaning of the statute. The rights of those ladies would be mere charges upon the land, which they could release. They could unite with the principal owner and convey an absolute fee in possession, at any time. Such action could not possibly be coerced, but the statute refers to the power, and not to the greater or less probability of its execution. In the case of *Mason* v. *Jones*, the judges of the court of appeals, in their consultation, agreed that the charge of an annuity for life after the termination of two lives in being, upon the rents and profits of land, did not suspend the absolute power of alienation, within the statute.

The fee simple absolute devised to John Hunter, jun. in the will, in a large portion of the real estate, is, unfortunately for him, changed by the codicil into a fee defeasible upon his dying

without leaving any lawful children or descendants at the time of his death. The codicil does not give him an estate tail by implication which our statute abolishing entails would have converted into a fee simple absolute, as the failure of issue is expressly limited to the time of his death, and without any such limitation in the will it would have resulted from the statute relative to the creation and division of estates.

There is not the slightest reason for supposing that the fee simple devised to John Hunter, jun. in the will is reduced by the codicil to a mere life estate.

It was contended, on the argument, by the counsel for John Hunter, jun. that the devise over to his sisters of the lands previously given to his father for life and then to him in fee, upon his dying without leaving lawful issue at the time of his death, was too remote, as it might suspend the power of alienation during the lives of his father and himself and of any number of his children who might die before him, and who might not have been in being at the time of the death of the testator. It is true that the power of alienation might be suspended during the lives of the plaintiff and of John Hunter, jun. and any number of his children; but the statute has reference to the lives the continuance of which actually suspend the power, and the power is in no manner suspended by the lives of the children of John Hunter, jun. The suspense must necessarily exist during the lives of himself and his father, and no longer, whether his children die in his lifetime or survive him. The question is not how many may die during the term of the suspension, but how many of those upon whose lives the suspension is made to depend. Otherwise, as thousands die every hour, there could be no suspension at all. I am not in favor of tying up the estates of persons who are capable of taking care of them, and very much doubt the expediency of restricting the estate given in the will to the grandson and the only male descendant, in that degree, of the testator; but I must administer the law as I find it.

There is nothing to invalidate the devises in the 6th, 7th and 8th clauses of the will, of certain lots in New-York to the

three granddaughters, upon the death of their father, or to the issue, or in default of issue, to the survivors of any of them who might die in his lifetime.

The remainder in the land given to Mary Mills for life, devised to John Hunter, jun. is included in the contingent devise over to the granddaughters, upon his dying without issue. The words in which the devise over is contained, in the codicil, are very comprehensive, and include all and every. part and portion of the real estate which passed to John Hunter, jun. under the will.

The charge upon the income of the estate, for the education of the grandchildren, is not void as illegally suspending the power of alienation of the real estate, and the absolute ownership of the personal property. It might be presently released by each, but for their minority; and a suspension resulting simply from minority is not such as is contemplated by the statute. The executors are of course authorized to retain out of the residuum of the personal estate and invest the requisite fund to produce an income sufficient to complete the education of the grandchildren.

They can in like manner retain and invest a sufficient amount to produce the requisite income to pay the annuity to Mary Mills.

The amount in each case may be settled by Mr. Miller, who has heretofore been appointed a referee in this action; and it must be declared that upon a separation thereof from the general fund the residue of the estate shall be exonerated from the charges, unconditionally as it respects the grandchildren, and so far as relates to Mary Miller, upon her written consent.

Questions were raised, upon the argument, as to the nature and extent of the estate. of John Hunter, jun. in the Bayard farm and of his eventual estate in Hunter's Island, Hart Island, and the Provoost farm. My impressions as to these may be inferred from what I have already said, but the questions are so important to the parties interested that they should be clearly and directly settled.

He takes a present fee in the Bayard farm, with a restriction

Hunter *v.* Hunter. ·

as to selling it until he shall attain the age of twenty-five years, determinable on his electing, at the death of his father, to remove to Hunter's Island, or, on his omission or refusal to do that, at his death if he should leave no lawful issue then living. He can sell the farm on his attaining the requisite age, and give a title for it, defeasible only upon his dying without such issue, as such sale would deprive him of his right of electing to change his residence to the island, and such right of election would also necessarily fail if his father should outlive him.   He will take a fee on his father's death, upon his electing to remove to Hunter's Island, and executing a deed for the Bayard farm to his sisters, subject to the privilege to them and their mother mentioned in the codicil, in the two islands and the Provoost farm, determinable in favor of his sisters on his dying without having lawful issue living at the time of his death.   On his acquiring the fee he can of course dispose of such property and confer a title therefor, subject to be defeated only upon the specified contingency.

There can be no question as to the disposition of those islands and the Provoost farm, should John Hunter, jun. die in the lifetime of his father with or without surviving issue, or in case of his own election to take the same, should he survive his father.

It may be proper to declare that the plaintiff is the trustee for his children, and will continue such during their respective minorities.

A decree must be entered in conformity with this opinion. The necessary accounts may be taken by Mr. Miller, the former referee, whose appointment as such should be continued.

The costs of all the parties, including reasonable counsel fees, must be paid out of the residuum of the personal estate bequeathed in the 18th clause of the will.

Liberty must be reserved to any of the parties to apply to this court for such additions to the decree as may be rendered necessary by any future event.

[Dutchess General Term, July 5, 1853. *Barculo, Brown* and *S. B. Strong*, Justices.]